**WEST/CRS**

**2010-1199**

# United States Court of Appeals
# for the Federal Circuit

MEDIA QUEUE, LLC,

*Plaintiff-Appellant,*

v.

NETFLIX, INC

*Defendant-Appellee,*

and

BLOCKBUSTER, INC.

*Defendant-Appellee,*

and

GREENCINE HOLDINGS, LLC.

*Defendant.*

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

APR 20 2010

JAN HORBALY
CLERK

---

*Appeal from the United States District Court for the Northern District of California, Case No. 3:09cv1027, Judge Susan Illston*

---

## PRINCIPAL BRIEF OF PLAINTIFF-APPELLANT MEDIA QUEUE, LLC

MICHAEL J. NEWTON, ESQ.
JASON W. COOK, ESQ.
STACEY G. WHITE, ESQ
ALSTON & BIRD, LLP
2200 Ross Ave., Suite 3601
Dallas, Texas 75201
Phone: (214) 922-3400
Fax: (214) 922-3899

*Attorneys for Plaintiff-Appellant Media Queue, LLC*

APRIL 20, 2010

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant Media Queue, LLC certifies the following:

1.    The full name of every party or amicus represented by me is:

   Media Queue, LLC

2.    The real name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   Not Applicable

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   ALSTON & BIRD LLP:  Michael J. Newton, Jason W. Cook, Stacey G. White


April 20, 2010

_Michael J. Newton_
Michael J. Newton
Attorney for Plaintiff-Appellant

i

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES .................................................................. vi

STATEMENT OF RELATED CASES ................................................... viii

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................ 2

STATEMENT OF THE CASE .................................................................. 3

STATEMENT OF THE FACTS ................................................................. 6

    I.   THE '243 PATENT WAS INSPIRED BY DEFICIENCIES IN THE NETFLIX SYSTEM ................................................................................ 6

    II.   NETFLIX UNSUCCESSFULLY ATTEMPTED TO PREVENT MR. GROSS FROM OBTAINING THE '243 PATENT ............................................... 7

    III.   DESPITE NETFLIX'S EFFORTS, THE '243 PATENT ISSUED AFTER A THOROUGH AND RIGOROUS EXAMINATION ...................................... 9

    IV.   THIS CASE ADVANCED TO SUMMARY JUDGMENT AFTER AN ABBREVIATED PROCEEDING WITH A VERY LIMITED RECORD ................. 9

    V.   THE DISTRICT COURT QUICKLY DISPOSED OF THIS MATTER BY ISSUING AN UNDULY NARROW CLAIM CONSTRUCTION ............................. 10

SUMMARY OF THE ARGUMENT ........................................................ 13

ARGUMENT ................................................................................... 14

    I.   THE ISSUES IN THIS CASE ARE TO BE REVIEWED DE NOVO ............. 14

    II.   THE DISTRICT COURT IMPROPERLY GRANTED SUMMARY JUDGMENT OF NON-INFRINGEMENT BECAUSE IT ERRED IN CLAIM CONSTRUCTION ...... 15

A. *The District Court Erred in Its Construction of Notification Rules By Adding the Limitation "About Queue Status."* ...................................15

   1. The Claim Language Shows That Notification Rules Are "For The Subscriber Rental Queue" and Not Limited to Notifications "About Queue Status." ........................................................................16

   2. Contrary to the District Court's Interpretation, the Preamble Shows That Notification Rules Are About "Activity In A Subscriber Rental Queue" And Not Limited to Notifications "About Queue Status." ........................................................................16

   3. The Specification Contemplates a Broad Understanding of Notification Rules...........................................................................17

   4. The District Court Ignored a Claim Differentiation Argument Which Showed That Notification Rules Are Not Limited to Notifications "About Queue Status." .....................................17

B. *The District Court Erred in Its Construction of Queue Replenishment Control Rules.* ..............................................................20

   1. Queue Replenishment Control Rules Are Broad Enough to Include Methods of Queue Alteration Other Than Addition of Items to The Queue. .................................................................20

   2. The District Court Misconstrued The Prosecution History And Incorrectly Found That Mr. Gross Had Limited The Meaning of Queue Replenishment Control Rules. .................................................21

   3. Mr. Gross Argued that Hastings Was Distinguishable Due to The Lack of Both Addition of Items to The Queue and Ordering of Items in The Queue. ........................................................................23

   4. Mr. Gross' Statement Could Not Constitute Waiver Because It Was Not Relied Upon By The Examiner Nor Was It Repeated During Prosecution.........................................................................24

   5. The Specification Contemplates a Broad Construction of Queue Replenishment Control Rules.............................................................26

6. The District Court Impermissibly Limited Queue Replenishment Control Rules to the Automatic Features from an Embodiment Described in the Specification. ...................................26

7. The District Court Erred by Failing to Follow Established Principles of Claim Differentiation. ..................................28

8. The Specification Contemplates a Broader Interpretation of Queue Replenishment Control Rules. ..................................29

9. The District Court Ignored the Plain Meaning of "Can" And Interpreted That Word to Mean "Must" in the Context of Allowing Automatic Features to Be a Part of Queue Replenishment Control Rules ..................................31

C. *The District Court Erred in Its Construction of Authorized by the Subscriber by Limiting This Term to an Embodiment Described in the Specification.* ...................................32

1. The District Court Erred by Taking Words from the Specification Out of Context. ..................................32

2. The District Court Improperly Narrowed This Term to One of the Ten Objects Listed for the Invention ..................................33

3. The Specification Contemplates a Broad Interpretation of Authorized by the Subscriber. ..................................34

4. The District Court Improperly Confined This Term to One Embodiment Disclosed in the Specification. ..................................34

III. THIS CASE SHOULD BE REMANDED FOR FURTHER PROCEEDINGS ......................36

A. *The Netflix Motion for Summary Judgment Must Be Vacated Because It Fails Under a Proper Claim Construction.* .............................36

B. *Blockbuster's Motion for Summary Judgment Also Fails Under a Proper Claim Construction.* ...................................37

C. *Greencine's Stipulation of Non-infringement Was Predicated on the District Court's Claim Construction and It Must Be Vacated.* ..........38

IV. CONCLUSION ..................................39

ADDENDUM

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE
REQUIREMENTS

# TABLE OF AUTHORITIES

*Page(s)*

## <u>CASES</u>

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................14

*Chiuminatta Concrete Concepts Inc., v. Cardinal Indus., Inc.*,
    145 F.3d 1303 (Fed. Cir. 1998) ..............................................14

*Comark Communs. v. Harris Corp.*,
    156 F.3d 1182 (Fed. Cir. 1998) ..............................................28

*Cybor Corp. v. FAS Techs., Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998) (*en banc*) ............................15

*Dayco Prods., Inc. v. Total Containment, Inc.*,
    329 F.3d 1358 (Fed. Cir. 2003) ..............................................18

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
    849 F.2d 1430 (Fed. Cir. 1988) ..............................................27

*Electro Med. Sys., S.A. v. Cooper Life Sci., Inc.*,
    34 F.3d 1048 (Fed. Cir. 1994) ................................................35

*Gart v. Logitech, Inc.*,
    254 F.3d 1334 (Fed. Cir. 2001), *cert. denied*, 534 U.S. 1114 (2002) ...............27

*Halliburton Energy Servs, Inc. v. MI LLC*,
    514 F. 3d 1244 (Fed. Cir. 2008) .............................................19

*Intamin, Ltd., v. Magnetar Techs. Corp.*,
    483 F.3d 1328 (Fed. Cir. 2007) ..............................................14

*JVW Enterps., Inc. v. Interact Accessories, Inc.*,
    424 F.3d 1324 (Fed. Cir. 2005) ..............................................35

*KeyStone Retaining Wall Sys., Inc., v. Westrock, Inc.*,
    997 F.2d 1444 (Fed. Cir. 1993) ..............................................14

*Laitram Corp. v. NEC Corp.,*
    163 F.3d 1342 (Fed. Cir. 1998) .................................................................27

*Lava Trading, Inc. v. Sonic Trading Mgmt., LLC,*
    445 F.3d 1348 (Fed. Cir. 2006) .................................................................38

*Leggett & Platt, Inc. v. Hickory Springs Mfg, Co.,*
    285 F.3d 1353 (Fed. Cir. 2002) .................................................................28

*Lemelson v. General Mills,*
    968 F.2d 1202 (Fed. Cir. 1992) ........................................................... 24, 25

*Nazomi Communications, Inc. v. Arm Holdings, PLC,*
    403 F. 3d 1364 (Fed. Cir. 2005) ...............................................................18

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)(en banc) ........................... 18, 19, 21, 24, 28, 35

*Spring Window Fashions LP v. Nova Indus. L.P.,*
    323 F.3d 989 (Fed. Cir. 2003) ..................................................................25

*Superguide Corp. v. DirecTV Enter., Inc.,*
    358 F.3d 870 (Fed. Cir. 2004) ..................................................................35

## STATUTES AND RULES

28 U.S.C. § 1295(a)(1)...............................................................................1

28 U.S.C. § 1338(a) ..................................................................................1

28 U.S.C. § 2107......................................................................................1

35 U.S.C. §§ 101, et seq............................................................................1

Fed. Rule App. Proc. 4(a) ..........................................................................1

Fed. Rule Civ. Proc. 56(c) ........................................................................14

Federal Circuit Rule 47.5 ........................................................................ viii

## STATEMENT OF RELATED CASES

Counsel for plaintiff-appellant Media Queue, LLC, certifies the following pursuant to Federal Circuit Rule 47.5:

1.    No other appeal from the same civil action or proceeding in the lower court or body was previously before this or any other appellate court.

2.    No cases are known to counsel to be pending in this or any other court will directly affect or be directly affected by this Court's decision in the pending appeal.

# JURISDICTIONAL STATEMENT

This appeal from the final order of the United States District Court for the Northern District of California arises under the patent laws of the United States, 35 U.S.C. §§ 101, et seq.    The District Court had jurisdiction over this patent infringement suit under 28 U.S.C. § 1338(a).    Jurisdiction in this Court is predicated upon 28 U.S.C. § 1295(a)(1).  Notice of this appeal was timely filed on February 10, 2010, pursuant to 28 U.S.C. § 2107 and Federal Rule of Appellate Procedure 4(a). A0980.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Did the district court err in its claim construction of the claims at issue, including the term "A set of notification rules"?

2.    Did the district court err in its claim construction of the claims at issue, including the term "A separate set of queue replenishment control rules"?

3.    Did the district court err in its claim construction of the claims at issue, including the term "authorized by the subscriber"?

4.    Insofar as any portion of the district court's claim construction was erroneous, did the district court err in granting summary judgment of non-infringement?

## STATEMENT OF THE CASE

On October 24, 2008, Media Queue, LLC filed a patent infringement lawsuit against Netflix, Inc., Blockbuster, Inc., GameFly, Inc., Greencine, LLC, and Greencine Holdings, LLC.[1]  A0981-1021.  Media Queue charged defendants with infringing claims 13, 16, 18-23, 25, and 26 of U.S. Patent No. 7,389,243, (the '243 patent) entitled "Notification system and method for media queue."  The technology described in the '243 patent is a system and method for notifying subscribers to media rental websites of information relating to the subscriber's rental queue.  A0032-64.  Defendants are operators of web-based media rental services.  On December 1, 2009, after an abbreviated claim construction and summary judgment proceeding, the district court granted summary judgment of non-infringement to defendants Netflix and Blockbuster.  A0005-31.

The issues on appeal focus on the construction of three claims from the '243 patent.[2]  Those terms ("a set of notification rules," "authorized by the subscriber," and "a separate set of queue replenishment control rules") are found in each of the asserted independent claims, 13 and 23.  The independent claims read as follows,

---

[1] Claims against GameFly, Inc. were subsequently dismissed with prejudice, and claims against Greencine, LLC were dismissed without prejudice.

[2] Eight terms were briefed.  However, at Judge Illston's request the parties agreed to limit the proceeding to the three terms integral to the then-pending summary judgment motions.  A2221-22.

with disputed claim terms highlighted:

13. A method of electronically notifying a subscriber to a content provider of activity in a subscriber rental queue associated with the subscriber, including the steps of:

a. defining **a set of notification rules** for the subscriber rental queue, which notification rules are **authorized by the subscriber**;

b. monitoring the subscriber rental queue with a computer in accordance with said **set of notification rules** and **a separate set of queue replenishment control rules authorized by the subscriber** so that said computer can determine if a composition of such rental queue should be altered through additions of playable media titles and/or ordering of playable media titles in the subscriber rental queue should be altered; wherein said **queue replenishment control rules** include a trigger event to be used in determining when said subscriber rental queue should be modified, and said trigger event is based on a quantity of playable media items remaining in the subscriber rental queue;

c. providing a recommender system configured to provide recommendations for playable media titles;

d. sending an electronic notification to the subscriber with said computer in response to an affirmative determination under step (b) that such notification is necessary based on said **set of notification rules**;

e. causing said recommender system to interact with the subscriber and provide a playable media title recommendation in response to user input provided within a response to said electronic notification;

f. adding a playable media title recommendation to said subscriber rental queue in response to subscriber input to said recommender system.

23. A method of electronically notifying a subscriber to a content provider of activity in a subscriber rental queue associated with the subscriber, including the steps of:

a) defining **a set of notification rules** for the subscriber rental queue, which **notification rules** are **authorized by the subscriber**;

b) monitoring the subscriber rental queue with a computer in accordance with said **set of notification rules** and **a separate set of queue replenishment control rules authorized by the subscriber** so that said computer can determine if a composition and/or ordering of

playable media titles in the subscriber rental queue should be altered;
c) sending an electronic notification to the subscriber with said computer in response to an affirmative determination under step (b) that such notification is necessary based on said **set of notification rules**; wherein said notification provides directions for the subscriber to accept and/or modify any proposed alterations of the subscriber rental queue; further comprising said subscriber accepting and/or modifying said proposed alteration based on said directions.

In its order, the district court construed "a set of notification rules" to mean "a set of rules governing the transmittal of notifications about queue status sent to the subscriber." A0016. This construction is unduly narrow and is not supported by the specification. A2154-55. The district court construed "a separate set of queue replenishment control rules" to mean "a set of rules (distinct from the set of notification rules) governing whether to automatically add playable media titles to the subscriber's rental queue." A0021. Here the district court erred by improperly importing limitations from the specification into the claim language, improperly interpreting the prosecution history, and construing the claim language in contravention to established principles of claim differentiation. A2156-60. The district court construed "authorized by the subscriber" to mean "elected by the subscriber after the subscriber is presented with a choice among multiple options." A0021-22. Here, the district court erred by again importing limitations from the specification. A2160-63

The district court's finding of non-infringement for Netflix and Blockbuster and the stipulation of non-infringement for Greencine was based on this erroneous claim construction.[3]    A0001-02.    Under a proper construction, the motions for summary judgment should have been denied.

For these reasons, Media Queue timely filed its Notice of Appeal of February 10, 2010.  A0980.

## STATEMENT OF THE FACTS

### I.  THE '243 PATENT WAS INSPIRED BY DEFICIENCIES IN THE NETFLIX SYSTEM.

J. Nicholas Gross, inventor of the '243 patent, was frustrated with the communication or lack thereof he received from Netflix regarding his subscriber rental queue.  A1099-1100.  Netflix is an online media rental business that allows its subscribers to select various movies, place those movies in a rental queue, and then receive those movies via mail.  A1099.  Mr. Gross subscribed to the Netflix service, but he found himself without any new movies to view or any communications from Netflix as to the reason why he was not receiving movies. Mr. Gross then conceived of several improvements to Netflix and some of those

---

[3] Greencine has decided not to participate in this appeal.  However, for reasons detailed in Section III.C of this Brief, Media Queue believes that Greencine is a proper party to this appeal and it should be bound by the decision of this Court.

improvements are embodied in the '243 patent.[4]  A1100.  The '243 patent discloses

a notification system "for alerting subscribers to a status of their rental queues" by

providing "a number of components that interoperate to improve a subscriber's

experience, including an intelligent queue monitor which works on his/her behalf

to ensure that an adequate and interesting list of titles are brought to the attention

of subscribers." A0032 at Abstract.

## II.  NETFLIX UNSUCCESSFULLY ATTEMPTED TO PREVENT MR. GROSS FROM OBTAINING THE '243 PATENT.

While the '243 patent was being prosecuted, Mr. Gross engaged in

negotiations with Netflix regarding sale or licensing of his inventions.[5]

Negotiations eventually broke down between Netflix and Mr. Gross.  Mr. Gross

sent Netflix a letter pursuant to 35 USC § 154(d) in which he detailed allegations

that Netflix was using inventions found in several of Mr. Gross' pending

applications – including the application that matured into the '243 patent.  *See*

A1100.  At that time, Netflix attempted to derail the prosecution of Mr. Gross'

application by having Mr. Gross submit to the PTO a declaration from Neil Hunt,

Netflix's Chief Products Officer.  A1156-66.

---

[4] There are an additional fifteen pending patent applications related to the '243 patent.  A1100 at n.1.

[5] Mr. Gross was aware that his invention was being used without his permission and he filed a petition to make special in order to speed up the prosecution of his application.  In that petition, he alleged that Blockbuster was infringing his claims. A1467-69.

In that declaration, Netflix attempted to establish a prior public use of Mr. Gross' invention. *Id.* Mr. Gross disagreed with the assertions of the Hunt Declaration, but out of an abundance of caution he submitted it to the PTO. A1168-81. In the documents accompanying the Hunt Declaration, Mr. Gross pointed out numerous errors and inconsistencies in the Declaration. *Id.* For example, exhibit 3 of the Hunt Declaration purports to be a copy of an email sent to a subscriber that notified the subscriber that Netflix shipped a movie from that subscriber's queue, the queue was now low, and invited the subscriber to add movies to the queue. A1158-59. Mr. Gross, however, pointed out that this exhibit lacked credibility for several reasons. First, it purported to mail a Spider-Man DVD that would be arriving on or about June 27, 2002. However, as the Examiner verified in his Office Action, "Spiderman" was not released on DVD until November 2002. A1171. In addition, all of the movies mentioned in the purported email were released on DVD months after the purported June 2002 date of the email – including a movie, Men in Black II, that was released after the date on which Mr. Hunt claimed that Netflix stopped sending such emails. A1172. The Examiner reviewed the Hunt Declaration and shared Mr. Gross' skepticism as to whether the purported emails were authentic and he found the Hunt Declaration to lack credibility. A1265-67 (noting that the exhibits to the declaration misspell movie titles and purport to send out movies before they had been released on DVD).

8

## III. DESPITE NETFLIX'S EFFORTS, THE '243 PATENT ISSUED AFTER A THOROUGH AND RIGOROUS EXAMINATION.

Netflix's system was considered by the Examiner during the prosecution of the '243 patent. The Netflix system itself was cited as prior art along with other pieces of prior art that reference the Netflix system. *See e.g.,* A0779-82. In particular, the Examiner thoroughly reviewed U.S. Patent No. 6,584,450 ("Hastings"), which is assigned to Netflix. The Examiner repeatedly used Hastings as part of an obviousness rejection. *See e.g.,* A0330-39. Mr. Gross was able to distinguish his invention over the Hastings reference by pointing out novel aspects of his invention not found in Hastings. *See e.g.,* A0303, A0320-23.

The '243 patent issued on June 17, 2008. The patent was sold to Media Queue, LLC, which filed suit against the defendants seeking compensation for their use of the invention claimed in the '243 patent.

## IV. THIS CASE ADVANCED TO SUMMARY JUDGMENT AFTER AN ABBREVIATED PROCEEDING WITH A VERY LIMITED RECORD.

A few months after the case was filed, Netflix moved the court to transfer the case to the Northern District of California. Netflix argued that California was a more convenient district. The court agreed and transferred the case to Judge Illston of the Northern District of California. Judge Illston held a status conference shortly after the case was transferred. At this status conference, she agreed to allow an abbreviated claim construction proceeding coupled with early summary

9

judgment motions.  *See* A1076.  At this point, Media Queue had only propounded one set of interrogatories and taken one deposition.  Despite this limited record, the parties briefed claim construction and defendant-appellees Netflix and Blockbuster each filed motions for summary judgment of non-infringement premised on the construction of the three terms at issue here.[6]

## V.  THE DISTRICT COURT QUICKLY DISPOSED OF THIS MATTER BY ISSUING AN UNDULY NARROW CLAIM CONSTRUCTION.

Several months after this process began the district court handed down its claim construction and summary judgment rulings.  In that Order, the district court construed "a set of notification rules" to mean "a set of rules governing the transmittal of notifications about queue status sent to the subscriber."  A0016.  The district erred in its construction by including the phrase "about queue status."  A2079.  This is in error for at least three reasons.  First, this limitation is not supported by the claim language.  Second, the specification supports a broader construction of the claim term.  Third, the court ignored arguments regarding claim differentiation.

Similarly, "a separate set of queue replenishment control rules" was also improperly construed to mean "a set of rules (distinct from the set of notification rules) governing whether to automatically add playable media titles to the

---

[6] Greencine did not participate in the summary judgment briefing, nor did it file a motion for summary judgment.

subscriber's rental queue." A0021. The district court's construction requires automatic addition of titles to the subscriber's queue. However, queue replenishment control rules are not limited to "addition" of titles to the queue. For example, the claims contemplate the queue replenishment control rules will also deal with changes to the order of items in the queue. In limiting the term to "addition" the district court erred in its ruling regarding the prosecution history and ignored the language of the claims and the specification. The court also erred by reading in an "automatic" limitation. Here again the court read in a limitation from one embodiment in the specification and failed to properly give weight to the language of the claims.

Finally, "authorized by the subscriber" was improperly limited to mean "elected by the subscriber after the subscriber is presented with a choice among multiple options." A0021-22. The district court erred by confining this term to aspects of one embodiment in the specification and misinterpreting language in the specification.

Based on these erroneous claim constructions, the district court granted summary judgment of non-infringement in favor of Netflix and Blockbuster. Netflix argued that its system did not contain "queue replenishment control rules" or "notification rules" that have been "authorized by the subscriber." A1526. The district court found for Netflix because none of the accused queue replenishment

11

control rules required automatic addition of titles to the subscriber's queue and the accused notification rules were not authorized via selection from amongst a group of options or they were not "about queue status."[7]   A0022-26.   Similarly, Blockbuster moved for summary judgment arguing that it does not have queue replenishment control rules that have been "authorized by the subscriber" and that its system does not interact with the recommender system as required by claims 13, 16, and 18-22.   A1811.   The judge found for Blockbuster because its system did not automatically add items to the subscriber's queue as required by the construction of "queue replenishment control rules."   A0031.   The court, however, found issues of material fact regarding all other aspects of Blockbuster's summary judgment motion.   *Id.*   After receiving the district court's claim construction, Media Queue stipulated that Greencine did not infringe when applying the district court's claim construction.   A0001-02.   Media Queue based its stipulation on its current understanding of Greencine's system.

---

[7] As noted in footnote 9 of the district court order, Media Queue also asserted that "Netflix News" implicates notification rules in the Netflix system. Netflix objected to Media Queue's evidence and the district court declined to rule on whether this feature was a notification rule because it found that there were no queue replenishment control rules and thus, there was no need to rule on Netflix's objection. It is Media Queue's position that the evidence was properly before the district court and that it showed that Netflix had notification rules that were expressly authorized by the subscriber. A0027 at n. 9.

## SUMMARY OF THE ARGUMENT

Media Queue appeals the district court's improper grant of summary judgment of non-infringement to defendant-appellees Netflix and Blockbuster that was based entirely on the district court's erroneous claim construction. The claim construction order violated established tenets of claim construction such as claim differentiation and the prohibition on limiting the claims to an embodiment described in the specification. The stipulation of non-infringement regarding Greencine should also be vacated because it is premised on the court's erroneous construction.

For all these reasons, the district court committed reversible error in granting to summary judgment of non-infringement to defendants. Media Queue requests that this Court:

(1) vacate the district court's erroneous claim construction;

(2) adopt the claim construction proposed by Media Queue;

(3) vacate the district court's grants of summary judgment;

(4) vacate the stipulation of non-infringement; and

(5) remand the matter to the district court for further proceedings consistent with this Court's (above) decision herein.

# ARGUMENT

## I. THE ISSUES IN THIS CASE ARE TO BE REVIEWED DE NOVO.

This Court reviews summary judgment rulings without deference. *Intamin, Ltd., v. Magnetar Techs. Corp.,* 483 F.3d 1328, 1333 (Fed. Cir. 2007). Summary judgment is appropriate only where the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); Fed. Rule Civ. Proc. 56(c). A material fact is one that may affect the decision and the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The party opposing summary judgment is entitled to the benefit of all inferences from the evidence presented. A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the non-moving party. *KeyStone Retaining Wall Sys., Inc., v. Westrock, Inc.,* 997 F.2d 1444, 1449-50 (Fed. Cir. 1993) (citations omitted); *see also Anderson,* 477 U.S. at 255; *Chiuminatta Concrete Concepts Inc., v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1307 (Fed. Cir. 1998).

The issues presented by the district court's order regarding summary judgment turn on whether the district court properly construed terms from the '243 patent. The district court's claim construction is likewise subject to *de novo*

14

review. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1451 (Fed. Cir. 1998) (*en banc*) (citations omitted).

## II. THE DISTRICT COURT IMPROPERLY GRANTED SUMMARY JUDGMENT OF NON-INFRINGEMENT BECAUSE IT ERRED IN CLAIM CONSTRUCTION.

In their motions for summary judgment, Netflix and Blockbuster claimed that they did not infringe the patent because certain features were not present in its online media rental systems, including "a set of notification rules," and "a separate set of queue replenishment control rules" that each had been "authorized by the subscriber." However, when those claim elements are properly interpreted, the facts demonstrate that such features are present.

### A.    The District Court Erred in Its Construction of Notification Rules By Adding the Limitation "About Queue Status."

A proper construction of the term notification rules does not include the limitation "about queue status." The district court erroneously held that "it is evident from the claim language and intrinsic evidence that the notification rules are about the subscriber's queue status, and not any notification." A0016. This ruling is incorrect because it is not supported by the claim language, the specification supports a broader reading of the term, and this construction violates the Court's teaching on the doctrine of claim differentiation. A1101-04, A2077-79, A1831-34, A2153-55.

1. **The Claim Language Shows That Notification Rules Are "For The Subscriber Rental Queue" and Not Limited to Notifications "About Queue Status."**

The language of claims 13 and 23 is consistent in regards to their use of notification rules.    In each of these claims, the notification rules are "defin[ed]...for the subscriber rental queue" and used in "monitoring the subscriber rental queue" in order to "send[] electronic notification to the subscriber."    A0058 at 27:15-28; 28:15-25.    Thus, the language of the claims themselves indicates that the notification rules are "for the subscriber rental queue."    By requiring notification rules to be "about queue status," the court improperly narrowed the claim language in way that is unsupported by the specification.    For example, the specification contemplates the existence of notification rules that are "for the subscriber rental queue," but not strictly "about queue status."    One such notification rule is a rule used to determine whether to send any sort of notifications at all.    A0049 at 9:54-57.

2. **Contrary to the District Court's Interpretation, the Preamble Shows That Notification Rules Are About "Activity In A Subscriber Rental Queue" And Not Limited to Notifications "About Queue Status."**

The court looked to the preamble of the claims to provide support for the notion that the notification rules are limited to notifications "about queue status." The preambles of claims 13 and 23 each state:

> A method of electronically notifying a subscriber to a content provider of activity in a subscriber rental queue associated with the subscriber,

including the steps of:

*Id.* at 27:15-17; 28:14-16. (emphasis added). The preambles make no mention of the term "notification rules"; instead, they merely note that the claimed methods notify subscribers of "activity" in a queue. Activity is a broad word that encompasses many things and nowhere is this "activity" limited to updates about queue status. Instead, the specification lists several examples of notifications that do not pertain to "queue status," such as sending notices of movies that may be of interest to the subscriber. A0050 at 12:16-20.

### 3. The Specification Contemplates a Broad Understanding of Notification Rules.

Further, the specification supports a broader reading of the term "notification rules." The specification lists several examples of possible notification rules. One such notification rules is to allow the subscriber to "indicate how often he/she should receive notices." A0049 at 9:48-50. Again, this disclosed rule is "for the subscriber rental queue," but it is not limited to being "about queue status."

### 4. The District Court Ignored a Claim Differentiation Argument Which Showed That Notification Rules Are Not Limited to Notifications "About Queue Status."

Finally, the district court erred by not considering the doctrine of claim differentiation.[8] In addition to the asserted claims 13 and 23, the term notification

---

[8] The district court's order made no mention of the claim differentiation argument regarding the construction of notification rules. This argument was raised during

rules is also found in claims 1 and 27. The asserted and unasserted claims should be examined together to in order to glean insight into what the patentee believed he was claiming. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-15 (Fed. Cir. 2005)(en banc). Unasserted claim 1 includes language similar to that of claims 13 and 23 in that it also requires, in relevant part,

> a. defining a set of notification rules for the subscriber rental queue, which notification rules are authorized by the subscriber;
>
> b. monitoring the subscriber rental queue with a computer in accordance with said set of notification rules and a separate set of queue replenishment control rules authorized by the subscriber so that said computer can determine if a composition should be altered through additions of playable media titles and/or ordering of playable media titles in the subscriber rental queue should be altered;
>
> c. sending an electronic notification to the subscriber with said computer in response to an affirmative determination under step (b) that such notification is necessary based on said set of notification rules...

A057 at 26:11-38. The construction of notification rules should be consistent across the claims. *See Nazomi Communications, Inc. v. Arm Holdings, PLC*, 403 F. 3d 1364, 1370 (Fed. Cir. 2005)(quoting *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1371 (Fed. Cir. 2003) ("[I]f a claim term appears in more than one claim it should be construed the same in each.")). Claim

---

the hearing without objection from defendants. *See* A2115-16; A2079. Defendants objected to other evidence and arguments raised at the hearing, but raised no such objection to the claim differentiation argument. *See* A2144-45. Thus, to the extent that defendants may have had an objection to this line of argument, that objection has been waived.

11 depends on claim 1 and this claim adds just one limitation to the independent claim.

> 11. The method of claim 1, wherein said notification includes an indication of a **status of the subscriber rental queue.**

A058 at 27:9-11. The doctrine of claim differentiation states that "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Halliburton Energy Servs, Inc. v. MI LLC*, 514 F. 3d 1244, 1252 n.3 (Fed. Cir. 2008) (citing *Phillips.*, 415 F.3d at 1315.). Under this doctrine, the notification rules of claim 1 would not include an indication of queue status. The term notification rules should be construed the same in each of the claims of the '243 patent. Therefore, the notification rules of the asserted claims should not be limited to notifications "about queue status."

Thus, for all of the foregoing reasons, a proper construction of notification rules would not include the limitation "about queue status." This Court should modify the district court's construction by deleting the offending phrase thereby, changing the construction to "a set of rules governing the transmittal of notifications."[9]

---

[9] Media Queue would prefer that the Court adopt the construction proposed by Media Queue in its claim construction briefing. That construction is "a set of rules relating to notifications sent to the subscriber." However, in the interest of expediency, Media Queue would not object to a modification of the district court construction. That modification, proposed above, would delete the offending phrase "about queue status" and leave in place the rest of the district court's construction.

**B.    The District Court Erred in Its Construction of Queue Replenishment Control Rules.**

The district court improperly narrowed queue replenishment control rules by limiting this term to (a) only addition of materials to the queue and (b) by requiring that addition to happen automatically.   A1106-08, A2080-83, A1834-38, A2156-60.   Queue replenishment under the terms of the '243 patent is not so limited. While the specification describes an optional set of "automatic" features, this term is not limited to those features described in one embodiment in the specification.

**1.  Queue Replenishment Control Rules Are Broad Enough to Include Methods of Queue Alteration Other Than Addition of Items to The Queue.**

First, queue replenishment control rules govern more than just addition of titles to the queue.   The plain language of claim 13 states that the queue replenishment control rules are used to

> determine if a composition of such rental queue should be altered through additions of playable media titles and/or ordering of playable media titles in the subscriber rental queue should be altered; wherein said queue replenishment control rules include a trigger event to be used in determining when said subscriber rental queue should be modified ...

A0058 at 27:24-31.  Similarly, claim 23 uses queue replenishment control rules to

> determine if a composition and/or ordering of playable media titles in the subscriber rental queue should be altered.

*Id.* at 28:23-25.   In both of these claims there is an unequivocal reference to changing the order of the items in the queue.   Thus, queue replenishment control

rules must be broad enough to also permit changes to the order of items and not be limited to the addition of items in the queue.

It should also be noted that while claim 13 explicitly mentions "additions of playable media titles" there is no such clause in claim 23. As this Court has noted,

> [o]ther claims of the patent in question, both asserted and unasserted can also be valuable sources of enlightenment as to the meaning of a claim term. Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims. Differences among claims can also be a useful guide in understanding the meaning of a particular claim terms

*Phillips.,* 1303 at 1314-15 (citations omitted). Thus, "queue replenishment controls rules" must be interpreted such that the phrase "through additions of playable media titles" has meaning in claim 13 and broad enough to allow for alteration of the composition or ordering of the queue through unspecified methods in claim 23. Therefore, the claim language indicates that queue replenishment control rules are directed more broadly to the concept of "replenishment" and not to the district court's narrow interpretation limiting the term to "addition" of items to the queue.

## 2. The District Court Misconstrued The Prosecution History And Incorrectly Found That Mr. Gross Had Limited The Meaning of Queue Replenishment Control Rules.

The district court chose to ignore this claim language based on an improper interpretation of the prosecution history. In each and every Office Action, the

Examiner found the Hastings reference to contain a set of queue replenishment

control rules.

> Hastings discloses a method for renting items where the customer sets
> up a rental queue. <u>A set of queue replenishment rules are employed to</u>
> <u>determine if the ordering of the titles in the queue should be changed.</u>
> When a DVD is returned (a trigger) the system checks the queue rules
> (Max Out option and/or Max Turns) to determine if the ordering of
> the queue should be changed.   When a new DVD is shipped, the
> ordering of the queue is changed because that title is taken out of the
> queue and is then in a checked out status.

A0653(emphasis added); *see also* A0525, A0330-31, A0298, A0242, A0167-68.

In his first response to an Office Action, Mr. Gross attempted to argue that

Hastings did not disclose queue replenishment control rules because there was no

"replenishment" in that reference.

> In the Hastings system, as the Examiner notes, titles are taken out but
> there is no "replenishment" shown or suggested. ... [I]t does not have
> the capability to determine if the "...composition of playable media
> titles in the subscriber rental queue should be altered <u>through</u>
> <u>additions of playable media titles.</u>"   Nor does Hastings show any
> mechanism for changing an "ordering" of titles in a queue; it remains
> precisely as before even if a DVD is moved into a delivered status.

A0640-41(emphasis in original).  However, he was rebuffed by the Examiner.

> With respect to the argument that Hastings does not disclose queue
> replenishment control rules, the examiner disagrees.   Hastings
> discloses rules that govern when and how the queue ordering is to be
> changed (Max Out option and/or Max Turns).   There are rules that
> control the ordering of titles in the queue as claimed.  If you return
> two movies, you get two more sent out and they come off the rental
> queue list and are now in checked out status.  This satisfies what has
> been claimed because the ordering of the queue has been changed.

A0529-30. From that point on, Mr. Gross acquiesced to the Examiner's view of the Hastings reference, but went on to distinguish his invention over the prior art by focusing on other aspects of the invention. However, the district court incorrectly interpreted this exchange to mean that changes to the order of items in queue were not within the purview of "queue replenishment control rules." A0019.

### 3. Mr. Gross Argued that Hastings Was Distinguishable Due to The Lack of <u>Both</u> Addition of Items to The Queue and Ordering of Items in The Queue.

First, Mr. Gross' statement shows that he viewed queue replenishment control rules to mean more than just addition of items to the queue. Mr. Gross noted that Hastings lacked "any mechanism for changing an 'ordering' of titles in a queue." A0641. In other words, the patentee argued that Hastings did not have queue replenishment control rules because it did not alter the composition of the queue "through additions of playable media titles" nor did it have "any mechanism for changing an 'ordering' of titles in a queue." *Id.* Thus, Mr. Gross' statement shows that he regarded his queue replenishment control rules as a set of rules involving at least the addition of items to a queue and the ordering of the items in a queue. Therefore, the prosecution history does not support narrowing queue replenishment control rules to merely cover the addition of media to the queue.

### 4. Mr. Gross' Statement Could Not Constitute Waiver Because It Was Not Relied Upon By The Examiner Nor Was It Repeated During Prosecution.

Even if this Court decides that Mr. Gross' statement showed some sort of intention to narrow queue replenishment control rules that statement should not be used to limit the construction of "queue replenishment control rules." On this point, it is instructive to review this Court's long-standing precedent in *Lemelson v. General Mills,* 968 F.2d 1202 (Fed. Cir. 1992). In *Lemelson,* this Court noted that the PTO was consistent in holding that the five clauses of the original claim were not patentably distinguishable over the Gardiol reference. *Id.* at 1207. The patentee obtained his patent by adding other limitations to distinguish his claims over the prior art. *Id.* This Court held that Lemelson could not return to his original position that the patent office had found to be unpatentable over Gardiol. *Id.* at 1207-08. This case was reaffirmed in *Phillips* when this Court cited it and noted that "the prosecution history provides evidence of how the PTO and the inventor understood the patent." 415 F.3d at 1317.

In the instant case, the district court limited queue replenishment control rules to exclude changes to the order of items in the queue based in significant part on the inventor's attempt to distinguish Hastings based on a lack of replenishment. A0018-19; *see* A0640-41("In the <u>Hastings</u> system, as the Examiner notes, titles are taken out, but there is <u>no</u> 'replenishment' shown or suggested."). However, this

ignores the fact that the Examiner disagreed with that argument and it was not the basis for allowing the claims of the '243 patent to be patentable over Hastings. The Court in *Lemelson* would not allow the patentee to rehash his original argument; instead, the Court held him to the position espoused repeatedly by the PTO. 968 F.2d at 1207-08. Similarly, Media Queue should be allowed to rely on the PTO's view that queue replenishment control rules include changes to the order of items in the queue.

This should be contrasted with *Spring Window Fashions LP v. Nova Indus. L.P.,* 323 F.3d 989, 995 (Fed. Cir. 2003). In *Spring Window,* the patentee made "detailed, consistent, and repeated" statements distinguishing his invention over a piece of prior art. *Id.* at 996. There the patentee never acquiesced to the Examiner's comments regarding the prior art. *Id.* at 995. Thus, even though the Examiner never agreed with the patentee, the statements made during prosecution were used to limit the claims. Here, the patentee made one statement attempting to distinguish Hastings based on a lack of queue replenishment. A0640-41. The patentee never revived that argument despite the fact that the Examiner repeated the exact same characterization of the Hastings reference in <u>five</u> subsequent office actions. A0525, A0330-31, A0298, A0242, A0167-68.

### 5. The Specification Contemplates a Broad Construction of Queue Replenishment Control Rules.

Finally, the specification supports a broader interpretation of "queue replenishment control rules." For example, the specification contemplates queue replenishment control rules related to the ordering of items in the queue.

> It may be desirable for the system to compare user selections ... against automatically recommended selections ... to see if the latter should "bump" the former in shipping priority.

A0048 at 8:61-67. It also contemplates queue replenishment control rules related to determining the desirability of certain selections.

> Thus, when the system detects that the last selection to be moved into Titles Out Queue 106 is less desirable than another selection that is available, the user can opt for the better selection to be shipped instead (either automatically, or through an email confirmation), thus avoiding a wasted shipment, wasted time, etc.

*Id.* at 8:42-56. Therefore, for all of the reasons listed above the district court erred by limiting queue replenishment control rules to merely the addition of items to the queue.

### 6. The District Court Impermissibly Limited Queue Replenishment Control Rules to the Automatic Features from an Embodiment Described in the Specification.

The next error in this construction is the district court's decision to limit queue replenishment control rules to automatically adding items to the queue. This is error because the district court failed to properly examine the claim language in

light of the other claims and the court improperly imported a limitation from the specification.

It is undisputed by the parties that the specification of the '243 patent expressly describes automatic queue replenishment features. However, these features are described in one embodiment from the specification and are merely examples of the options that may be present in a system embodying the claims of the '243 patent. A0047 at 6:45. Indeed, the embodiment describes the automatic features as merely options.

> A preliminary question is posed to the subscriber, such as, for example, whether they want to employ the benefit of auto queue monitoring, auto notifications, auto recommendations, auto shipments, etc.

A0048 at 7:53-57. In construing the claims, the district court crossed the line from viewing the claims in light of the specification to improperly limiting the claims to an embodiment described in the specification. *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347-48 (Fed. Cir. 1998) ("a court may not import limitations from the written description into the claims"); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1342-1343 (Fed. Cir. 2001), *cert. denied*, 534 U.S. 1114 (2002) (the court rejected a proffered construction because it "would improperly add a limitation appearing in the specification and the drawings, but not appearing in the unambiguous language of the claim"); *see also E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988); *Comark Communs. v. Harris Corp.*, 156

F.3d 1182, 1186 (Fed. Cir. 1998); *Leggett & Platt, Inc. v. Hickory Springs Mfg, Co.*, 285 F.3d 1353, 1357 (Fed. Cir. 2002) ("In consulting the specification ... the interpretative process may not import limitations from the specification into the defining language of the claims.").

### 7. The District Court Erred by Failing to Follow Established Principles of Claim Differentiation.

In addition to the asserted claims 13 and 23, the term queue replenishment control rules is also found in claims 1, 2, 4, 14, and 27. As discussed in reference to notification rules, asserted and unasserted claims should be examined together to in order to glean insight into what the patentee believed he was claiming. *See Phillips*, 415 F.3d at 1314-15. The unasserted claims shed important light on the proper construction of "queue replenishment control rules." For example, claim 1 includes language similar to that of claims 13 and 23 in that it also requires that the queue replenishment control rules be used to "determine if a composition should be altered through additions of playable media titles and/or ordering of playable media titles in the subscriber rental queue." A0057 at 26:19-24. Claim 1, however, contains additional language requiring that the user be presented with "a first choice to automatically trigger a modification of the subscriber rental queue, and a second choice which does not trigger a modification of the subscriber rental queue." *Id.* at 26:28-34. This language is very similar to the district court's interpretation of the automatic aspects of "queue replenishment control rules."

Although a subscriber may choose not to benefit from the automatic queue replenishment feature, the subscriber still has to be presented with this option, and a computer must determine whether the subscriber has selected this option. In other words, the feature of determining whether to automatically replenish media titles is an essential element of the claimed invention, not merely an optional feature.

A0020. However, under this Court's jurisprudence the queue replenishment control rules of claims 1, 13, and 23 should have a consistent meaning. If the language from claim 1 regarding the choice of automatic features is to have any meaning then queue replenishment control rules must not be limited to this feature or that language would be rendered superfluous. Thus, a proper reading of the claim in light of the other claims shows that queue replenishment control rules are not limited to "automatic" modifications to the queue.

### 8. The Specification Contemplates a Broader Interpretation of Queue Replenishment Control Rules.

The district court was also incorrect in its assertion that non-automatic queue replenishment is neither taught nor suggested in the '243 patent. *See* A0019. The specification details both automatic and non-automatic queue replenishment options. For example,

Threshold Option #1 (default) of course is the least 'proactive' of course, but still serves to accomplish the goal of reducing the chances that the Subscriber Selection Queue 110 will become completely empty. In some instances it may be desirable to incorporate a 'swap' feature, for example, that operates as a last minute check. **Thus, when the system detects that the last selection to be moved into Titles Out Queue 106 is less desirable than another selection that**

**is available, the user can opt for the better selection to be shipped instead (either automatically, or through an email confirmation),** thus avoiding a wasted shipment, wasted time, etc.   In another variation the user can also set up a limited response period (i.e., 1 day) so that if he/she does not reply favorably to the new choice, the original choice is shipped as planned to avoid delays.

A0048 at 8:42-56(emphasis added).  In this example, the ordering of the queue can be altered either automatically or by merely notifying the subscriber via email and then allowing the subscriber to take the desired action.  This example shows a "non-automatic" queue replenishment control rule that allows for the alteration to the queue to be performed by the subscriber.

In addition, the district court also erred in its holding that the queue replenishment control rules must be "automatic" because determinations of whether a queue is to be altered are made by the computer. A0019.  It is true that the asserted claims require the "computer" to determine whether the queue should be altered. A0058 at 27:21, 28:20.  However, determining that the queue should be altered and actually altering the queue are two different things.  For example, "in some embodiments, the system may merely alert the subscriber to the queue deficiency." A0051 at 14:6-7.  According to the patentee, "the primary advantage of the present invention lies in the fact that, unlike the prior art systems, a subscriber is notified of the deficiency in his/her selection queue, and is thus given an opportunity to address the same in a prompt fashion."  A0050 at 12:36-38.  Thus, the specification contemplates that the computer may determine the

existence of an issue with the queue and then merely alert the subscriber to the issue so that the subscriber may take any necessary steps to address the issue. As such, it is untrue that the use of a "computer" in claims 13 and 23 means queue replenishment must happen automatically.

### 9. The District Court Ignored the Plain Meaning of "Can" And Interpreted That Word to Mean "Must" in the Context of Allowing Automatic Features to Be a Part of Queue Replenishment Control Rules.

Finally, the district court ignored the plain meaning of the patentee's words during prosecution. Mr. Gross noted that his invention was one "in which a user **can** set up a set of rules which automatically cause a modification to a subscriber rental queue." A0640 (emphasis added). The court found it to be a "forced reading" of this statement to say that just because the user "can" set up such automatic modifications does not mean that a user "must" do so. A0020. However, the plain meaning of "can" would indicate that Mr. Gross was discussing a capability of the system as opposed to a requirement.

Thus, for all of the foregoing reasons the court erred in its construction of queue replenishment control rules. A proper construction of this term would not limit this term to addition or any sort of automatic feature. Therefore, a more

correct construction would be "a set of rules (distinct from the set of notification rules) governing the refilling of the subscriber's rental queue."[10]

## C. The District Court Erred in Its Construction of Authorized by the Subscriber by Limiting This Term to an Embodiment Described in the Specification.

The district court erred in its construction of "authorized by the subscriber" by misinterpreting the specification and by reading in limitations from the specification. A1104-06, A1838-40, A2084-88, A2160-63. A proper construction of "authorized" would be in line with the plain meaning of the phrase which is "permitted or sanctioned by the subscriber." *Id.*

### 1. The District Court Erred by Taking Words from the Specification Out of Context.

First, the district court relied on an out of context citation from the specification.  In support of its ruling, the court cited language from the specification noting that a drawback of the prior art was that those systems failed to provide subscribers with "any flexible degree of control over their rental selection queue or shipments."  A0021.  This statement however, makes no

---

[10] Here again Media Queue would prefer that this Court adopt the construction originally proposed by Media Queue.  That construction is "a set of rules (distinct from the set of notification rules) relating to the refilling of the subscriber's rental queue."  However, in the interest of expediency, Media Queue would not object to a modification of the district court's construction.  That modification would delete the offending phrase "whether to automatically add media items to the subscriber's queue" and replace that phrase with "refilling of the subscriber's rental queue."

mention of selection from a group of options. In fact, the most flexible way to provide options to the user would be to allow the user to make their own open ended choices. In either event, this portion of the specification is taken out of context. This text deals with control over things such as shipment of items. A0045 at 2:19-26 ("For example, subscribers are not given an option of whether a particular title in the rental queue should be shipped; it is automatically shipped, even if they may have changed their minds."). The "authorize" term is used in claims 13 and 23 in the context of the subscriber authorizing the queue replenishment control and notification rules. Thus, the specification's mention of flexible control over shipments in no way limits the claim term to the election of an option from a choice of options.

### 2. The District Court Improperly Narrowed This Term to One of the Ten Objects Listed for the Invention.

Next, the district court went on to note than an object of the invention is to implement "an intelligent queue monitoring system that allows subscribers/purchasers to define policies and rules to be used in determining what actions should be taken with respect to particular items in such queue, and at what times." A0021. The district court's reliance on this object is misplaced. First, there are at least ten objects of the '243 invention and the patent expressly states "different embodiments will likely include only one or more of the aforementioned

objects of the present inventions." A0046 at 3:45-49. Thus, there is no reason to believe that the claim language is limited by this particular object. Second, the cited object does not limit the claim terms to election of an item from amongst a group of options. Indeed, "defining" is a more open ended term than merely "electing" something from a group.

### 3. The Specification Contemplates a Broad Interpretation of Authorized by the Subscriber.

Further, the specification includes examples showing rules that are authorized by means other than the election of an option from amongst a group of options. For example, Fig. 2 depicts an embodiment where the subscriber is allowed to pick a number directed to either the number of items in a queue that would trigger review of that queue or the number days that should go by before the subscriber's queue is reviewed. A0035. In both of these options, a subscriber is allowed to freely enter a number into the system and is not presented with a choice of possible options.

### 4. The District Court Improperly Confined This Term to One Embodiment Disclosed in the Specification.

Finally, to the extent that an embodiment shows the subscriber being offered a set of options this should not be read into the claims. The patentee did not intend to limit the claims to the described embodiment. This Court has repeatedly stated that "a particular embodiment appearing in the written description may not be read

into a claim when the claim language is broader than the embodiment." *Superguide Corp. v. DirecTV Enter., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) (citing *Electro Med. Sys., S.A. v. Cooper Life Sci., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994)); *see also JVW Enterps., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (quoting *Phillips*, 415 F.3d at 1323) ("We do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee intends for the claims and the embodiments to be strictly coextensive.'"); *Phillips*, 415 F.3d at 1323 (stating that "[a]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). Mr. Gross repeatedly stated that the examples listed in the specification are just that – merely examples – of how his invention could be implemented. *See e.g.,* A0050 at 11:28-36 (noting the options described are "merely exemplary" and that other options could be used).

Thus, for all of the foregoing reasons the district court erred in its construction of "authorized by the subscriber." It would be more correct to give this term its usual meaning and as such, it should be construed as "permitted or sanctioned by the subscriber."

## III.  THIS CASE SHOULD BE REMANDED FOR FURTHER PROCEEDINGS

The summary judgment rulings regarding Netflix and Blockbuster and the stipulation of non-infringement regarding Greencine should be vacated.   The summary judgment rulings and the non-infringement stipulation are all based on the district court's faulty claim construction.   If this Court modifies the lower court's claim construction rulings this case should be allowed to proceed.

### A.    The Netflix Motion for Summary Judgment Must Be Vacated Because It Fails Under a Proper Claim Construction.

Netflix's summary judgment arguments quickly fail under a proper claim construction.    A2124-2141.    Netflix sought summary judgment of non-infringement based on its argument that its system did not contain queue replenishment control rules or notification rules that have been "authorized by the subscriber."  A1526.  The district court found for Netflix because none of the accused queue replenishment control rules of Netflix's system required automatic addition of titles to the subscriber's queue and the features accused as notification rules were not authorized by selection from amongst a group of options or they were not "about queue status."  A0022-27.  As shown in the previous sections, the limitations focused upon by the district court improperly narrow the terms at issue. Once these improper limitations are removed from the constructions Netflix has no argument that it fails to meet the requirements of these claim terms.   In addition,

there is a fact issue regarding whether Netflix has a notification rule "about queue status" that is "authorized by the subscriber." A0027 at n. 9. In its presentation to the district court, Media Queue showed an example of "Netflix News" that included information regarding the subscriber's queue. A2129. Subscribers must check a box in order to be subscribed to "Netflix News." Netflix objected to this evidence on the grounds that it was not presented as part of Media Queue's previous filings. The district court declined to rule on that objection because it found summary judgment on other grounds. A0027 at n.9. It is Media Queue's position that this evidence was properly before the district court and that it shows at least a fact issue regarding whether Netflix has notification rules.

### B.    Blockbuster's Motion for Summary Judgment Also Fails Under a Proper Claim Construction.

Blockbuster's motion for summary judgment is also deficient under a proper construction of the claims at issue. A2108-2113. Blockbuster moved for summary judgment arguing that it does not have queue replenishment control rules that have been "authorized by the subscriber."[11] The judge found for Blockbuster because its system did not automatically add items to the subscriber's queue as required by the construction of "queue replenishment control rules." A0031. The court found

---

[11] Blockbuster also moved for summary judgment based the "recommender system" term found in claims 13, 16, and 18-22. Summary judgment was denied on this ground because there were unresolved fact issues surrounding Blockbusters use of a "recommender system" as required by the claims. A0030-31.

issues of material fact regarding all other aspects of Blockbuster's summary judgment motion. *Id.*

### C.    Greencine's Stipulation of Non-infringement Was Predicated on the District Court's Claim Construction and It Must Be Vacated.

After receiving the district court's claim construction, Media Queue stipulated that Greencine did not infringe. A0001-02. Based on recent correspondence between Greencine's counsel in the district court case and this Court, it appears that Greencine is arguing that it is not a proper party to this appeal because of the stipulation of non-infringement. This argument is based on a strained interpretation of the stipulation of non-infringement. The exact wording of the stipulation shows that it was premised on the district court's claim construction:

> Media Queue, LLC ... and defendant Greencine Holdings, LLC. ... have stipulated on the record at the hearing before this Court on December 15, 2009, that **in light of the claim constructions set forth in the Order**, the products and services offered or sold by Greencine do not infringe any of the asserted claims of the '243 patent.

A0001-02 (emphasis added). Thus, if this Court in any way revisits the district court's claim construction rulings then the stipulation should be vacated and the case against Greencine remanded for further proceedings. *See Lava Trading, Inc. v. Sonic Trading Mgmt., LLC,* 445 F.3d 1348 (Fed. Cir. 2006) (vacating a

stipulated judgment of non-infringement due to the lower court's errors in claim construction).

## IV. CONCLUSION

For all of the reasons stated above, plaintiff-appellant Media Queue respectfully requests that the Federal Circuit:

(1) Vacate the district court's claim construction as set forth in the district court's Opinion and Order of December 1, 2009;

(2) adopt the claim construction proposed by Media Queue;

(3) vacate the district court's grant of summary judgment of non-infringement to defendants-appellees Netflix and Blockbuster;

(4) vacate the stipulation of non-infringement as to defendant-appellee Greencine;

(5) remand this matter to the district court for further proceedings consistent with this Court's decision herein; and

(6) provide such other and further relief as this Court deems proper.


Dated:  April 20, 2010

By: _____

Michael J. Newton
ALSTON & BIRD, LLP
*Attorneys for Plaintiff-Appellant Media Queue, LLC*

# ADDENDUM

1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   MATTHEW I. KREEGER (CA SBN 153793)
    MKreeger@mofo.com
3   MARCELO GUERRA (CA SBN 232431)
    MGuerra@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105-2482
    Telephone: 415.268.7000
6   Facsimile: 415.268.7522

7   Attorneys for Defendant
    NETFLIX, INC.

8
                    UNITED STATES DISTRICT COURT
9
                 NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN FRANCISCO DIVISION
11

12
    MEDIA QUEUE,                    Civil Action No.    3:09-cv-01027-SI
13
                    Plaintiff,      [PROPOSED] JUDGMENT
14
         v.
15
    NETFLIX, et al.,
16
                    Defendants.
17

18

19
         **WHEREAS** on December 1, 2009, the Court issued a Claim Construction Order and Order
20
    Granting Defendants' Motions for Summary Judgment ("Order") (D.I. 200);
21
         **WHEREAS,** for the reasons set forth in the Order, the products and services offered or sold
22
    by defendants Netflix Inc. ("Netflix") and Blockbuster Inc. ("Blockbuster") do not infringe any of the
23
    asserted claims of United States Patent No. 7,378,243 ("the '243 patent");
24
         **WHEREAS** plaintiff Media Queue, LLC ("Media Queue") and defendant Greencine
25
    Holdings, LLC. ("Greencine") have stipulated on the record at the hearing before this Court on
26

27

28

December 15, 2009, that in light of the claim constructions set forth in the Order, the products and

services offered or sold by Greencine do not infringe any of the asserted claims of the '243 patent;

**WHEREAS** it is hereby stipulated and agreed, by and between Blockbuster and Media

Queue, and by their attorneys, that in light of the Order and pursuant to Fed.R.Civ.P. 41(a)(1)(ii),

Blockbuster's counterclaim of invalidity of the '243 patent is hereby dismissed without prejudice.

**WHEREAS** the Court requested that the parties submit a joint Proposed Judgment; and

**WHEREAS**, in light of the foregoing, entry of judgment is warranted in favor of all

defendants with respect to all of Media Queue's claims for relief.

**THEREFORE, IT IS HEREBY ORDERED** that

(1)     **FINAL JUDGMENT** is hereby entered in favor of defendants and against Media

Queue.

(2)     The deadline for any defendant to move for attorneys' fees pursuant to Federal Rule of

Civil Procedure 54(d)(2) and 35 U.S.C. § 285 is _____.

Stipulated as to form and content,

By: /s/ *Mike Newton*
Michael J. Newton (CA SBN 156225)
(michael.newton@alston.com)
Jason W. Cook *(admitted pro hac vice)*
(jason.cook@alston.com)
Stacey G. White *(admitted pro hac vice)*
(stacey.white@alston.com)
ALSTON + BIRD LLP
2200 Ross Avenue, Suite 3601
Dallas, TX 75201-2708
Telephone:     214-922-3400
Facsimile:      214-922-3899

Sean P. DeBruine
ALSTON & BIRD LLP
Two Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, California  94306
Telephone:  (650) 838-2000
Facsimile:  (650) 838-2001
Email: sean.debruine@alston.com

Attorneys for Plaintiff Media Queue, LLC

By:/s/*Matt Kreeger (by permission M. Newton)*
MICHAEL A. JACOBS (SBN 111664)
MJacobs@mofo.com
MATTHEW I. KREEGER (SBN 153793)
MKreeger@mofo.com
MARCELO GUERRA (CA SBN 232431)
MGuerra@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant Netflix, Inc.


By:/s/*David Wooten (by permission M. Newton)*
DAVID K. WOOTEN(*admitted pro hac vice*)
LEISA TALBERT PESCHEL (*admitted pro hac vice*)
SCOTT W. BREEDLOVE (*admitted pro hac vice*)
VINSON & ELKINS
1001 Fannin Street
2300 First City Tower
Houston, TX 77002
Telephone: (713) 758-2095
Facsimile: (713) 615-5936
Email: dwooten@velaw.com
lpeschel@velaw.com
sbreedlove@velaw.com


SHARTSIS FRIESE LLP
JAMES P. MARTIN (CA SBN. 170044)
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111
Tel: (415) 421-6500
Fax: (415) 421-2922
Email:jmartin@sflaw.com

Attorneys for Defendant BLOCKBUSTER, INC.


By:/s/*Steve Niebow (by permission M. Newton)*
MICHAEL D. SCHULMAN, ESQ. (CA SBN 137249)
LAW OFFICES OF MICHAEL D. SCHULMAN
21800 Oxnard Street, Suite 750

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Woodland Hills, CA 91367
Telephone: (818) 999-5553
Fax : (818) 999-5570
mdsesq@aol.com

Attorneys for Defendant GREENCINE HOLDINGS,
LLC, a Delaware Limited Liability Company

**SO ORDERED.**

Dated: _____

_____
HON. SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIA QUEUE, LLC | No. C 09-1027 SI |
| Plaintiff, | **CLAIM CONSTRUCTION ORDER AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| NETFLIX, INC., *et al.* | |
| Defendants. | |

On November 17, 2009, the Court held a claim construction hearing and heard oral argument on the defendants' motions for summary judgment. Having carefully considered the arguments of counsel and the papers submitted, and for good cause shown, the Court hereby adopts the constructions set forth below, and GRANTS defendants' motions for summary judgment.

**BACKGROUND**

Plaintiff, Media Queue, LLC ("Plaintiff") is a recently established Oklahoma Limited Liability Corporation that owns U.S. Patent No. 7,389,243 ('243 patent), the patent-in-suit, entitled "Notification system and method for media queue."[1] The '243 patent was filed on February 2, 2004 (based on a

---

[1] Defendants allege that Media Queue, LLC acquired the '243 patent from John Gross, the named inventor and prosecuting attorney for the patent, solely for the purpose of litigating this action. The records indicate that John Gross had interacted with Netflix during prosecution of the patent application that eventually led to the issuance of the '243 patent. Mr. Gross contacted Netflix to negotiate an acquisition deal for his patent application. The communications between the two parties include Netflix's letter to Mr. Gross, which was submitted in an Information Disclosure Statement to the United States Patent and Trademark Office (USPTO). The letter alleges that the claims of Mr. Gross's patent application were anticipated by Netflix's prior use. June 7, 2007 IDS Submission, Newton Decl., Ex. C (Docket No. 161-3). After failing to reach an agreement with Netflix, Mr. Gross sold his patent rights to plaintiff.

A0005

United States District Court
For the Northern District of California

1  provisional application dated January 31, 2003) and was issued on June 17, 2008. The '243 patent

2  discloses a notification system method "for alerting subscribers to a status of their rental queues" by

3  providing "a number of components that interoperate to improve a subscriber's experience, including

4  an intelligent queue monitor which works on his/her behalf to ensure that an adequate and interesting

5  list of titles are brought to the attention of subscribers." '243 patent, Abstract, Chivvis Decl., Ex. A

6  (Docket No. 171-2).

7       Defendants Netflix and Blockbuster ("Defendants") are operators of subscription-based online

8  movie rental services that provide DVD rental services to users enrolled in a subscription plan that

9  allows them to "check out" a certain number of DVDs at a time. Users may choose movies to be

10 shipped by visiting the service provider's website and selecting titles that the user would like to receive.

11 The selected movies are added to the subscriber's rental queue. The rental queue maintains the

12 subscriber's movie choices so that the subscriber need not log onto the website to receive a new movie.

13 Once the subscriber returns a movie, the service provider sends the subscriber the next available title

14 from the subscriber's rental queue. Netflix began offering this subscription-based online movie rental

15 plan in the fall of 1999. W. Reed Hastings, Marc B. Randolph, and Neil Duncan Hunt, who conceived

16 of this new online system for providing media rental services, applied for a patent on this innovation

17 on April 28, 2000, naming Netflix as the assignee. The patent was granted on June 24, 2003 as U.S.

18 Patent No. 6,584,450 ("Hastings"), entitled "Method and Apparatus for Renting Items." Hastings,

19 Chivvis Decl., Ex. B (Docket No. 171-3).

20      The '243 patent describes Netflix's online rental service system as prior art and claims certain

21 improvements to Netflix's system. Specifically, the '243 patent acknowledges that Netflix permits users

22 to engage in "an interactive online session" in which the user "select[s] a number of titles, and then

23 prioritize[s] them in a desired order for shipment within the selection queue." 1:29-32. The '243 patent

24 also acknowledges that Netflix's system can make recommendations for titles to a user during such

25 online session. 1:34-36. The '243 patent notes that Netflix's system is limited in that it fails to notify

26 the subscriber of the status of its rental queue when the rental queue is empty, near empty, or perhaps,

27 contains less desirable selections, 2:1-6; does not give subscribers any flexible degree of control over

28 their rental selection queue or shipments, 2:19-26; and does not actively monitor the subscriber rental

1  queue when the subscriber is logged off. 2:42-49. Accordingly, the '243 patent claims an "intelligent

2  queue monitoring" system that purports to overcome these limitations.

3  On October 24, 2008, plaintiff filed suit against defendants for patent infringement in the Eastern

4  District of Oklahoma.[2] The lawsuit was then transferred to this Court on February 24, 2009. Plaintiff

5  alleges that certain features of defendants' systems infringe claims 13, 16, 18-23, 25 and 26 of its patent.

6  Now before the Court is the parties' claim construction, Netflix's motion for summary judgment of

7  noninfringement, and Blockbuster's motion for summary judgment of noninfringement.

8

9  **LEGAL STANDARD**

10  "Patent infringement is a two step inquiry. First, the court must construe the asserted claim. . . .

11  Second, the court must determine whether the accused product or process contains each limitation of

12  the properly construed claims, either literally or by a substantial equivalent." *Freedman Seating Co.*

13  *v. Am. Seating Co.*, 420 F.3d 1350, 1356-57 (Fed. Cir. 2005) (internal citation omitted). While the first

14  step is a question of law, the second is a question of fact. *Id.*

15

16  **I.   Claim Construction**

17  Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370,

18  372 (1996). Terms contained in claims are "generally given their ordinary and customary meaning."

19  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quotation omitted). "[T]he ordinary and

20  customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill

21  in the art in question at the time of the invention[.]" *Id.* at 1313. In determining the proper construction

22  of a claim, a court begins with the intrinsic evidence of record, consisting of the claim language, the

23  patent specification, and, if in evidence, the prosecution history. *Id.* at 1313; *see also Vitronics Corp.*

24  *v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir.1996). "The appropriate starting point . . . is always

25  ────────────────────

26  [2] Plaintiff originally named five defendants, Netflix, Inc., Blockbuster, Inc., GameFly, Inc.,
Greencine, LLC, and Greencine Holdings, LLC. Claims against GameFly, Inc. were subsequently

27  dismissed with prejudice, and claims against Greencine, LLC were dismissed without prejudice.
Greencine Holdings joined defendants Netflix and Blockbuster in filing the Joint Claim Construction
Statement (Docket No. 159) but did not join defendants in filing the Joint Opposition Claim

28  Construction Brief (Docket No. 169).

3

with the language of the asserted claim itself." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998); *see also Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997).

Although claims are interpreted in light of the specification, this "does not mean that everything expressed in the specification must be read into all the claims." *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983). For instance, limitations from a preferred embodiment described in the specification generally should not be read into the claim language. *See Comark*, 156 F.3d at 1186. However, it is a fundamental rule that "claims must be construed so as to be consistent with the specification." *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003) (cited with approval by *Phillips*, 415 F.3d at 1316). Therefore, if the specification reveals an intentional disclaimer or disavowal of claim scope, the claims must be read consistent with that limitation. *Phillips*, 415 F.3d at 1316.

Finally, the Court may consider the prosecution history of the patent, if in evidence. The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution. *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir.1995). In most situations, analysis of this intrinsic evidence alone will resolve claim construction disputes. *See Vitronics*, 90 F.3d at 1583. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317. Courts should not rely on extrinsic evidence in claim construction to contradict the meaning of claims discernable from examination of the claims, the written description, and the prosecution history. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir.1999) (citing *Vitronics*, 90 F.3d at 1583). However, it is entirely appropriate "for a court to consult trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field." *Id.*

## II. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

4

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc., v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) ("summary judgment may be granted when no reasonable jury could return a verdict for the nonmoving party") (internal quotations omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.* The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Summary judgment can be used to determine both infringement and noninfringement. *Avia Group Intern., Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988). The moving party bears the burden of proving infringement or noninfringement by a preponderance of the evidence. *Mannesmann Demag Corp. v. Engineered Metal Products, Inc.*, 793 F.2d 1279, 1282 (Fed Cir. 1986).

United States District Court
For the Northern District of California

5

To establish infringement, every limitation in a claim as construed by the Court must be in the accused product, either exactly or by a substantial equivalent. *Carroll Touch, Inc. v. Electro Mechanical Systems*, 15 F.3d 1573, 1576 (Fed. Cir. 1993). A claim is literally infringed if the accused product is exactly the same as each element of the asserted claim. *Hi-Life Products, Inc. v. American National Water-Mattress Corp.*, 842 F.2d 323, 325 (Fed. Cir. 1986). Even if a product does not literally infringe it may infringe under the doctrine of equivalents. *See Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 21 (1997). "A claim element is equivalently present in an accused device if only 'insubstantial differences' distinguish the missing claim element from the corresponding aspects of the accused device." *Sage Prods., Inc. v. Devon Indus. Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997).

Although the determination of patent infringement is a fact-intensive process, "comparison of a properly interpreted claim with a stipulated or uncontested description of an accused device or process would reflect such an absence of material fact issue as to warrant summary judgment of infringement or noninfringement." *D.M.I. Inc. v. Deere & Co.*, 755 F.2d 1570, 1573 (Fed. Cir. 1985).

## DISCUSSION

### I. Claims at issue in the '243 patent

Plaintiff alleges that certain features of defendants' systems infringe claims 13, 16, 18-23, 25 and 26 of the '243 patent. The parties dispute the meaning of three claim terms recited in independent claims 13 and 23.[3] The claims at issue read as follows, with the disputed terms in bold.

> 13. A method of electronically notifying a subscriber to a content provider of activity in a subscriber rental queue associated with the subscriber, including the steps of:
> a. defining **a set of notification rules** for the subscriber rental queue, which notification rules are **authorized by the subscriber**;
> b. monitoring the subscriber rental queue with a computer in accordance with said set of notification rules and **a separate set of queue replenishment control rules authorized by the subscriber** so that said computer can determine if a composition of such rental queue should be altered through additions of playable media titles and/or ordering of playable media titles in the subscriber rental queue should be altered;

---

[3] The parties initially asked the Court to construe eight disputed claim terms. However, the parties agreed during oral argument that the Court need only construe the three claim terms, "a set of notification rules," "a separate set of queue replenishment control rules," and "authorized by the user," if the construction of these terms would be dispositive of the issue of noninfringement raised in defendants' motions.

6

United States District Court
For the Northern District of California

wherein said queue replenishment control rules include a trigger event to be used in determining when said subscriber rental queue should be modified, and said trigger event is based on a quantity of playable media items remaining in the subscriber rental queue;

c. providing a recommender system configured to provide recommendations for playable media titles;

d. sending an electronic notification to the subscriber with said computer in response to an affirmative determination under step (b) that such notification is necessary based on said set of notification rules;

e. causing said recommender system to interact with the subscriber and provide a playable media title recommendation in response to user input provided within a response to said electronic notification;

f. adding a playable media title recommendation to said subscriber rental queue in response to subscriber input to said recommender system.

16. The method of claim 13, wherein said trigger event is based on said quantity of playable media items being equal to zero indicating that said subscriber rental queue is empty.

18. The method of claim 13, wherein said electronic notification includes information indicating said quantity of playable media items remaining in the subscriber rental queue.

19. The method of claim 13, wherein said electronic notification further provides recommendations on newly released playable media items for said subscriber.

20. The method of claim 13, wherein said electronic notification further provides recommendations on playable media items based on genre selections made by said subscriber.

21. The method of claim 13, wherein additional electronic notifications are sent until said subscriber replenishes said subscriber rental queue to contain a quantity of playable media items exceeding a specified threshold.

22. The method of claim 13 wherein said electronic notification includes an embedded uniform resource locator (URL) or an electronic response field associated with a first playable media item which when selected by said subscriber causes said playable media item to be moved to said subscriber rental queue.

23. A method of electronically notifying a subscriber to a content provider of activity in a subscriber rental queue associated with the subscriber, including the steps of:

a) defining **a set of notification rules** for the subscriber rental queue, which notification rules are **authorized by the subscriber;**

b) monitoring the subscriber rental queue with a computer in accordance with said set of notification rules and **a separate set of queue replenishment control rules authorized by the subscriber** so that said computer can determine if a composition and/or ordering of playable media titles in the subscriber rental queue should be altered;

c) sending an electronic notification to the subscriber with said computer in response to an affirmative determination under step (b) that such notification is necessary based on said set of notification rules;

wherein said notification provides directions for the subscriber to accept and/or modify any proposed alterations of the subscriber rental queue;

further comprising said subscriber accepting and/or modifying said proposed alteration based on said directions.

7

United States District Court
For the Northern District of California

25. The method of claim 23, further including a second electronic notification to the subscriber which confirms any subscriber action taken in response to said electronic notification.

26. The method of claim 23 wherein said notification further includes an embedded uniform resource locator (URL) or an electronic response field to solicit a feedback rating from the subscriber for a playable media title identified in said notification.

'243 patent, 27:15-28:35.

## II. Disputed claim terms in the '243 patent

### A. "A set of notification rules"

Independent claims 13 and 23 both recite a step of "defining a set of notification rules for the subscriber rental queue." Plaintiff contends that the term "a set of notification rules" should simply be construed as "a set of rules *relating to* notifications sent to the subscriber." Defendants contend that this term is indefinite and cannot be construed, or alternatively, to the extent that the term is amenable to construction, it should be construed to mean "a set of rules *governing the transmittal and content of* notifications *about queue status* sent to the subscriber."

#### 1. Indefiniteness

A patent specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. "[T]he purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citation omitted). The definiteness requirement "does not compel absolute clarity. Only claims not amenable to construction or insolubly ambiguous are indefinite." *Id.* (citation omitted). "Thus, the definiteness of claim terms depends on whether those terms can be given any reasonable meaning." *Id.* "If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds." *Exxon Research & Engineering Co. v. United States*, 265 F.3d 1371, 1375

8

United States District Court
For the Northern District of California

1   (Fed Cir. 2001). "By finding claims indefinite only if reasonable efforts at claim construction prove

2   futile, we accord respect to the statutory presumption of patent validity . . . and we protect the inventive

3   contribution of patentees, even when the drafting of their patents has been less than ideal." *Id.*; *see also*

4   *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008) (holding that

5   an accused infringer must show by clear and convincing evidence that "a skilled artisan could not

6   discern the boundaries of the claim based on the claim language, the specification and the prosecution

7   history, as well as her knowledge of the relevant art area").

8        The Court finds that defendants have not met their burden of providing clear and convincing

9   evidence that the term "a set of notification rules" is not amenable to construction or is insolubly

10   ambiguous. Defendants argue that while the asserted claims describe "notification rules" and

11   "replenishment control rules" as separate sets of rules, the specification fails to define the scope of these

12   terms so that it is impossible, even for one of ordinary skill in the art, to discern which features

13   described in the specification correspond to "notification rules" and "queue replenishment control

14   rules." Defendants note that the "queue control options," "threshold options," "notification options,"

15   "queue monitoring parameters," "queue replenishment parameters," and "queue management options"

16   recited in the detailed description ('234 patent, 6:41-65, 8:27-36, 9:34-64, 10:41-11:7) appear to be

17   related to the "notification rules" and the "queue replenishment control rules" of the claims. However,

18   defendants contend that the specification fails to distinguish the various "options" and "parameters"

19   associated with "notification rules" from those associated with "queue replenishment control rules" so

20   that the specification confuses rather than clarifies the meaning of these terms. For example, defendants

21   point out that in Figure 2 of the '243 patent, while the user interface screen 230, showing various

22   notification options that can be selected by a user, appears to correspond to "notification rules," the

23   option "No notice–autoship" does not relate to "notification rules" and instead relates to "queue

24   replenishment control rules" because under this option, a queue would be automatically replenished

25   without any notification to the user. Thus, defendants argue that the specification does not provide any

26   guidance for a person skilled in the art to discern the respective boundaries of "a set of notification

27   rules" and "a separate set of queue replenishment control rules."

28        Plaintiff argues that one of ordinary skill in the art will be able to understand from the

9

United States District Court
For the Northern District of California

1  description of user options and parameters displayed on the user interface screens of Figure 2, the

2  underlying notification rules and queue replenishment control rules defined by the system operator.

3  Plaintiff specifically notes that although the interface screen 230 with the notification options may relate

4  to both notification rules and queue replenishment control rules depending on the option selected, one

5  of ordinary skill in the art can easily distinguish the underlying notification rules and the queue

6  replenishment control rules based on the notification options. For example, if the option "No

7  notice–autoship" is selected, the notification rule will be to send no notice, and the queue replenishment

8  control rule will be to select and add a new title to the corresponding subscriber queue. Although the

9  drafting of the '243 patent has been less than ideal and the task of construing the claim terms may be

10 formidable, defendants have not provided clear and convincing evidence that the claim terms are

11 insolubly ambiguous. In other words, reasonable efforts at claim construction would not prove futile

12 and one of ordinary skill in the art would be able to discern the boundaries of what is being claimed

13 based on the claim language, the specification, the prosecution history, and his or her knowledge of the

14 relevant art. Accordingly, the Court finds that the term "a set of notification rules" is amenable to

15 construction.

16

17          **2.     Claim Construction**

18          As for the construction of the claim term, plaintiff proposes that "a set of notification rules" be

19 construed to mean "a set of rules *relating to* notifications sent to the subscriber," whereas defendants

20 propose that it be construed to mean "a set of rules *governing the transmittal and content of* notifications

21 *about queue status* sent to the subscriber." Plaintiff argues that defendants are attempting to

22 unnecessarily narrow the scope of the asserted claims by adding extraneous limitations that the

23 notification rules (1) govern the transmittal of notifications, (2) govern the content of notifications, and

24 (3) require the notifications to be about queue status. Plaintiff contends that the notification rules need

25 not necessarily "govern" the transmittal *and* the content of the notification. Plaintiff explains that the

26 notification rules may simply "relate to" whether or when to send a notification, the type of notification

27 to be sent, *or* the content of the notification. In sum, plaintiff argues that the definition of "a set of

28 notification rules" should not be limited by any language that is not explicitly recited in the asserted

10

claims.

Defendants contend that construing "a set of notification rules" as "a set of rules *relating to* notifications sent to the subscriber" will obscure the difference between notification rules and queue replenishment control rules because virtually all aspects of media queue rental systems have some relation to notifications. First, defendants point out that the term "rule" is commonly defined as "a prescribed guide for conduct or action."[4] Thus, the notification rules must do more than "relate to" notifications, and must actually "govern" the notifications sent to the subscriber. Defendants argue that such construction is fully supported by the specification. Specifically, defendants note that the detailed description recites that "the subscriber identifies specifically what type of policies/rules should be employed—i.e., what notice and action should be sent to him/her." '243 patent, 15:41-44. Defendants also note that both claims 13 and 23 require that the notification rules be used to determine when it is necessary to send a notification. *Id.* 27:36-39, 28:26-29.

Second, defendants argue that the notification rules must govern notifications about the status of the subscriber's queue, not just any notification. Defendants assert that construing the notification rules as otherwise would be inconsistent with the claim language and the descriptions in the specification. Particularly, defendants note that both claims 13 and 23 recite in their preambles "[a] method of electronically notifying a subscriber to a content provider of activity in a subscriber rental queue associated with the subscriber,"[5] and further specify in the claim body that the notification rules are "for the subscriber rental queue" and are used to "monitor the subscriber's queue." *Id.* 27:15-19, 28:14-18. Defendants also note that the summary of the invention states one of its objectives as providing "a notification system that alerts and informs subscribers/purchasers of the status of items in

---

[4] Defendants cite the Merriam Webster Collegiate Dictionary, 11th Ed. Chivvis Decl., Ex. D (Docket No. 169-5). Plaintiffs counter defendants' argument by pointing out that this dictionary also defines the term "rule" as a "guide," "procedure,"or "generalization."

[5] Plaintiff relies on *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1288 (Fed. Cir. 2008), to argue that generally, a preamble of a claim should not be construed as a limitation. However, *Symantec* specifically notes that a preamble can be construed as a claim limitation when a preamble term provides antecedent basis for a subsequent term in the claim. *Id.* Since the preambles of claims 13 and 23 both provide antecedent basis for the term "subscriber rental queue" recited in the body of the claims, the Court finds it appropriate to construe the preamble as a limitation in this case.

United States District Court
For the Northern District of California

11

1  a rental/purchase queue." '243 patent, 3:10-13.

2      Third, defendants contend that the claimed notification rules should be limited to rules governing

3  the transmittal and content of notifications sent to the subscriber. Specifically, defendants assert that

4  the scope of the claimed notification rules is not clear from the plain meaning of the claim language so

5  that it should be construed in light of relevant descriptions in the specification and the prosecution

6  history. Defendants rely on the descriptions of Figures 2, 3A, and 3B showing illustrative features of

7  the claimed invention for prompting a subscriber to select a desired notification option from plural

8  notification options. Defendants assert that the subscriber's selection of a notification option

9  determines how and when a notification should be sent to the subscriber as well as what should be

10 included in the notification. '243 patent, 9:34-45. Defendants also rely on the fact that during

11 prosecution of the '243 patent, the patent examiner described the notification rules as rules "that will

12 notify the subscriber when the ordering of the queue has been changed by the monitoring queue." First

13 Office Action 6, Chivvis Decl., Ex. E (Docket No. 169-6).

14     The Court finds that while plaintiff's construction is overly broad, defendants' construction is

15 too narrow. Defendants correctly argue that the notification rules cannot be construed as merely

16 "relating to" notifications sent to a subscriber and must actually govern or constrain some aspect of the

17 notifications. Also, it is evident from the claim language and the intrinsic evidence that the notification

18 rules are about the subscriber's queue status, and not any notification. Further, since a notification by

19 its plain meaning implies the transmittal or communication of information, the Court finds it appropriate

20 to construe the term "notification rules" to at least govern the transmittal or communication of the

21 notifications to the subscriber. However, the Court is not persuaded by defendants' argument that the

22 intrinsic evidence requires construing the notification rules to govern the content of notifications.

23 Although defendants point to Figures 3A and 3B of the '243 patent to demonstrate how the content of

24 notifications can vary depending on the notification option selected by the subscriber, plaintiff correctly

25 argues that this constitutes improperly "reading a limitation into the claim from the specification." *See*

26 *Comark*, 156 F.3d at 1187; *Phillips*, 415 F.3d at 1323. Therefore, the Court shall construe "a set of

27 notification rules" to mean "a set of rules governing the transmittal of notifications about queue status

28 sent to the subscriber."

United States District Court
For the Northern District of California

Case: 10-1099 Document: 35 Page: 67 Filed: 04/26/2010

**United States District Court**
**For the Northern District of California**

### B.    "A separate set of queue replenishment control rules"

Independent claims 13 and 23 both recite a step of "monitoring the subscriber rental queue with a computer in accordance with said set of notification rules and a separate set of queue replenishment control rules." Plaintiff proposes that "a separate set of queue replenishment control rules," in this context, be construed to mean "a set of rules (distinct from the set of notification rules) *relating to* the refilling of the subscriber's rental queue." Defendants contend that the claim term is indefinite, or in the alternative, if the claim term is amenable to construction, it should be construed to mean "a set of rules (distinct from the set of notification rules) *governing when to review* the subscriber's rental queue *and whether to automatically add media items* to the queue."

### 1.    Indefiniteness

As discussed above, defendants' argument in support of rendering the claim terms indefinite is based on the fact that the specification of the '243 patent fails to explicitly define the boundaries of the terms "notification rules" and "replenishment control rules." However, the Court finds that reasonable efforts will enable a person of ordinary skill in the relevant art to understand the meaning of these terms, thereby rendering these terms amenable to construction.

### 2.    Claim Construction

With regard to construction of the claim term, plaintiff argues that defendants are attempting to improperly narrow the construction of the claim term to cover only one portion of a preferred embodiment of the claimed invention that is disclosed in the specification. Defendants contend that, based on the plain meaning of the terms "replenishment," "control," and "rules," and the specification describing the options and parameters related to queue replenishment, the term "queue replenishment control rules" must be construed to govern *when* to review the rental queue and whether to *automatically add* items to the queue.

First, defendants contend that the queue replenishment control rules must govern whether to *automatically add* items to the queue. Defendants assert that the plain language of the term "queue replenishment control rules" means the rules must control the replenishment of the subscriber's queue.

1  Defendants also assert that the specification confirms that the replenishment is under the control of the

2  computer system so that it must be performed automatically, rather than manually by the subscriber.

3  Defendants further assert that during prosecution of the '243 patent, the patentee confirmed that he was

4  claiming "a set of rules which automatically cause a modification to a subscriber rental queue."

5  Amendment A and Response 9, Chivvis Decl., Ex. J (Docket No. 171-6). Second, defendants contend

6  that the "queue replenishment control rules" must also govern *when* to review the subscriber's rental

7  queue in light of the claim language indicating that the computer uses the notification rules and the

8  queue replenishment control rules to monitor the subscriber's rental queue and determine if an electronic

9  notification should be sent to the subscriber. '243 patent 27:21-28, 27:36-39, 28:20-29.

10      Plaintiff argues that defendants are attempting to construe the claim language to cover only the

11  preferred embodiments described in the specification. Plaintiff particularly objects to defendants'

12  proposed construction to limit "queue replenishment control rules" to rules governing whether media

13  titles should be automatically added to the queue, and exclude rules for simply determining whether the

14  queue is in need of replenishment and rules relating to the type of media items with which the queue

15  may be replenished.

16      Again, the Court finds that while plaintiff's construction of the claim term is overly broad,

17  defendants' construction is too narrow. Step (b) as recited in claim 13 reads as follows:

18          monitoring the subscriber rental queue with a computer in accordance with said set of
        notification rules and a separate set of queue replenishment control rules authorized by
19          the subscriber *so that said computer can determine if a composition of such rental queue*
        *should be altered through additions of playable media titles and/or ordering of playable*
20          *media titles in the subscriber rental queue should be altered.*

21  '243 patent, 27:21-29 (emphasis added). Step (b) as recited in claim 23 reads as follows:

22          monitoring the subscriber rental queue with a computer in accordance with said set of
        notification rules and a separate set of queue replenishment control rules authorized by
23          the subscriber *so that said computer can determine if a composition and/or ordering of*
        *playable media titles in the subscriber rental queue should be altered.*
24

25  *Id.* 28:20-25 (emphasis added). Based on the claim language, it is clear that "a separate set of queue

26  replenishment control rules" refers to a set of rules that is used by a computer to determine whether to

27  add media titles to the subscriber queue. As defendants point out, the term "queue replenishment"

28  clearly implies addition, and not just alteration, of media titles. Also, during prosecution of the '243

United States District Court
For the Northern District of California

14

United States District Court
For the Northern District of California

1  patent, the patent examiner made claim rejections based on the fact that queue replenishment rules

2  "employed to determine if the ordering of the titles in the queue should be changed" are disclosed in the

3  prior art Hastings patent. *See* First Office Action 6. In response, the patentee argued that "[i]n the

4  <u>Hastings</u> system . . . titles are taken out, but there is <u>no</u> 'replenishment' shown or suggested." The

5  patentee further asserted that his invention is distinguishable over the prior art in that it includes a

6  feature of altering the subscriber queue "<u>through additions of playable media titles</u>." Amendment A and

7  Response 9-10 (emphasis in original).[6]

8       Further, it is clear from the intrinsic evidence and the prosecution history that the asserted claims

9  only cover *automatic* replenishment of the subscriber queues. First, the claim language clearly indicates

10  that a computer determines "if a composition . . . and/or ordering of playable media titles in the

11  subscriber's rental queue should be altered" based on the notification rules and the queue replenishment

12  control rules. This language clearly implies that the computer, not the subscriber, determines whether

13  it should automatically modify the subscriber's rental queue. '243 patent, 27:25-26, 28:24-25.[7]

14       Second, a non-automatic queue replenishment feature is neither taught nor suggested in the '243

15  patent. Any feature related to queue replenishment is described as being automatically implemented

16  by a computer system in the specification. *See e.g.*, '243 patent, 10:28-31 (disclosing automatically

17  replenishing a queue without burdensome participation by the subscriber), 18:36-40 (disclosing a service

18  provider server device that includes a function for prompting a subscriber to select auto-notice/auto-

19  replenish/auto-ship options). Also, the background of the '243 patent describes how, in the prior art

20  system, subscribers run the risk of unwittingly leaving their queues empty and thereby not receiving

21  media items they would otherwise be entitled to receive "unless they constantly monitor their own rental

22  queue to make sure it is stocked with selections for shipping." '243 patent, 2:15-18. The summary of

---

[6] Although the language "through additions of playable media titles" is not included in claim 23, the Court still finds it appropriate to construe "queue replenishment" as "adding" media titles to the subscriber queue in light of the prosecution history and the plain meaning of the term "replenish."

[7] Plaintiff asserts that the queue replenishment control rules should be construed to cover rules for determining whether the subscriber's rental queue needs to be replenished (by the subscriber) and rules relating to the type or number of media items that may be added (by the subscriber). However, under such rules, the subscriber determines whether his or her queue should be altered, which is inconsistent with the claim language that specifically requires the computer to determine whether the subscriber's rental queue should be altered.

United States District Court
For the Northern District of California

1 the invention states that its object is "to provide a recommender system that coordinates with a queue

2 monitoring system, so that the subscribers/purchasers can enjoy the benefits of such system even during

3 periods when they are not actively engaged with an online rental/purchase system." '243 patent, 3:17-

4 21. The detailed description specifies one of the advantages of the claimed invention as "automatically

5 ensur[ing] that [the subscriber's] preference queue is never allowed to completely run 'dry' so to speak."

6 *Id.* 5:60-62. Further, plaintiff does not refute defendants' assertion that the queue replenishment feature

7 must be automatic and instead argues that the automatic *modification* of the subscriber queue is merely

8 an optional feature of the claimed invention in light of the language in the specification that describes

9 the primary advantage of the claimed invention as providing automatic *notification* to a subscriber about

10 his/her queue status. This argument, however, struthiously ignores the fact that both claims 13 and 23

11 explicitly recite the term "queue replenishment control rules." Although a subscriber may choose not

12 to benefit from the automatic queue replenishment feature, the subscriber still has to be presented with

13 this option, and a computer must determine whether the subscriber has selected this option. In other

14 words, the feature of determining whether to automatically replenish media titles is an essential element

15 of the claimed invention, not merely an optional feature.

16 Third, the patentee confirmed during prosecution of the '243 patent that his invention was

17 directed to techniques "in which a user can set up a set of rules which *automatically* cause a

18 modification to a subscriber rental queue." Amendment A and Response 9 (emphasis added). Plaintiff

19 argues that the patentee merely noted that a user "can" (but does not necessarily have to) set up rules

20 for causing automatic modification of the subscriber queue. However, plaintiff's somewhat forced

21 reading of the "can" language is inconsistent with the claim language explicitly reciting the term "queue

22 replenishment control rules" and the intrinsic evidence describing the queue replenishment feature as

23 an automatic feature implemented by a computer.

24 The Court notes that claim 13 recites language further requiring the queue replenishment control

25 rules to include "a trigger event to be used in determining *when said subscriber rental queue should be*

26 *modified.*" '243 patent, 27:29-31 (emphasis added). However, in light of the fact that this language is

27 not recited in claim 23, the Court finds that defendants' proposal to construe the term "queue

28 replenishment control rules" to govern "when to review the subscriber's rental queue" is improper.

16

United States District Court
For the Northern District of California

1    Therefore, the Court shall construe "a separate set of queue replenishment control rules" to mean "a set

2    of rules (distinct from the set of notification rules) governing whether to automatically add playable

3    media titles to the subscriber's rental queue."

4

5        **C.    "Authorized by the subscriber"**

6        Independent claims 13 and 23 both recite "a set of notification rules . . . authorized by the

7    subscriber" and "a separate set of queue replenishment control rules authorized by the subscriber." '243

8    patent, 27:18-24, 28:17-23.  Plaintiff proposes that the term "authorized by the subscriber" in this

9    context should simply be construed as "*permitted or sanctioned* by the user," whereas defendants

10   propose that the term be construed more narrowly in light of the specification to mean "a subscriber's

11   *election after being presented with a choice among multiple options*."

12       Defendants rely on the fact that all of the disclosed embodiments are directed to user selections

13   that control the management of the subscriber's queue.  Defendants argue that plaintiff's construction

14   of the claim language is so broad that it could even encompass a situation in which the subscriber is

15   required to take no particular action to "authorize" the relevant rules.  Defendants contend that such a

16   reading is clearly inconsistent with the specification.  On the other hand, plaintiff relies on *Howmedica*

17   *Osteonics Corp. v. Wright Medical Technologies, Inc.*, 540 F.3d 1337, 1345 (Fed. Cir. 2008), to argue

18   that "the fact that the specification describes only a single embodiment, standing alone, is insufficient

19   to limit otherwise broad claim language."  However, the Court finds that the intrinsic evidence supports

20   construing the claim language "authorized by the subscriber" to require affirmative selection of an

21   option by the subscriber from multiple options.   Specifically, in the background, the '243 patent

22   mentions Netflix's rental queue system as prior art and describes one of its drawbacks as not giving

23   subscribers "any flexible degree of control over their rental selection queue or shipments." '243 patent,

24   2:20-23. The summary of the invention goes on to state its objects as overcoming the limitations of the

25   prior art, and implementing "an intelligent queue monitoring system that allows subscribers/purchasers

26   to define policies and rules to be used in determining what actions should be taken with respect to

27   particular items in such queue, and at what times." '243 patent, 3:5-9. Accordingly, the Court finds that

28   there is sufficient intrinsic evidence to support construing the term "authorized by the subscriber" to

1   mean "elected by the subscriber after the subscriber is presented with a choice among multiple options."

2

3   **III.     Netflix's Motion for Summary Judgment of Noninfringement**

4           Netflix asserts that its system does not infringe any claims of the '243 patent as a matter of law

5   because its system does not employ "a set of notification rules" and "a separate set of queue

6   replenishment control rules" that are "authorized by the subscriber." Since the parties do not dispute

7   any part of the evidentiary record, Netflix's motion for summary judgment is based on the construction

8   of the three disputed claim terms "a set of notification rules," "a separate set of queue replenishment

9   control rules," and "authorized by the subscriber." Netflix asserts that to the extent these claim terms

10  are amenable to construction, the '243 patent claims must be construed to require that "the subscriber

11  be able to select the rules governing what notices the subscriber receives about the rental queue and

12  whether and how the rental queue is automatically replenished." Netflix's Mot. for Summ. Judg. 2

13  (Docket No. 171). Netflix asserts that its system does not allow users to customize automatic queue

14  replenishment or queue notification options to their individual preferences and therefore does not

15  infringe the '243 patent as a matter of law. On the other hand, plaintiff contends that defendants'

16  proposed construction of the claim terms is unnecessarily narrow. Plaintiff asserts that the '243 patent

17  claims are directed to novel methods for providing subscribers with electronic notifications about their

18  media title queues and that the claims are broad enough to cover the features of Netflix's system.

19  Plaintiff argues that there are at least genuine issues of material fact as to whether Netflix's system

20  employs "notification rules" and "queue replenishment control rules" that are "authorized by the

21  subscriber" as required by the '243 patent that would preclude the Court from granting Netflix's motion

22  for summary judgment. The Court will consider the parties' arguments based on the claim constructions

23  set out earlier in this Order. Specifically, the Court will construe the terms "a set of notification rules,"

24  "a separate set of queue replenishment control rules," and "authorized by the subscriber" to mean "a set

25  of rules governing the transmittal of notifications about queue status sent to the subscriber," "a set of

26  rules (distinct from the set of notification rules) governing whether to automatically add playable media

27  titles to the subscriber's rental queue," and "elected by the subscriber after the subscriber is presented

28  with a choice among multiple options," respectively.

United States District Court
For the Northern District of California

18

A. **Notification Rules Authorized by the Subscriber**

1. **Netflix's Terms of Use**

Plaintiff asserts that Netflix's Terms of Use, which must be accepted by all Netflix users, include notification rules governing the transmittal and content of notifications about queue status sent to the subscriber. Specifically, plaintiff points to portions of the Terms of Use describing when and what kind of electronic notifications Netflix will send to its subscribers:

> [We] send you an email letting you know when we have received a returned movie, and we also send you another email letting you know when we have shipped your next DVD, including the anticipated date of delivery.

> By using the Netflix service, you consent to receiving electronic communications from Netflix. These communications will include notices about your account (e.g., shipping and receiving e-mails and other transactional information) and information concerning or related to our service, such as featured films or other entertainment information or offerings.

McEntee Decl., Ex. B, 3, 17 (Docket No. 171-9).

Netflix contends that these terms of use do not amount to "notification rules authorized by the subscriber" since accepting terms of service is not "authorization" when the user has no choice but to accept. Netflix asserts that "authorization" within the context of the '243 patent requires an affirmative subscriber choice from among plural options presented to the subscriber and that Netflix does not provide subscribers with a choice among multiple options. Also, Netflix points out that the portions of the Terms of Use cited by plaintiff do not specifically indicate that Netflix will send notifications "for the subscriber rental queue." Specifically, Netflix argues that subscribers are not choosing rules governing whether and how they should be notified that their rental queues are running low or could be supplemented, and they are not tailoring notifications to meet their preferences.

In light of the Court's construction of the term "authorized by the subscriber" to mean "elected by the subscriber after the subscriber is presented with a choice among multiple options," the Court finds that a subscriber's accepting Netflix's overall Terms of Use does not satisfy the "authorization" element required by the '243 patent claims. Plaintiff argues that in accepting the Terms of Use, subscribers are in fact given a choice of either opting to use Netflix's services or opting not to use Netflix's services. However, someone who chooses not to accept the Terms of Use would not be a "subscriber" of Netflix's services. Accordingly, the Court finds that a subscriber's acceptance of

19

United States District Court
For the Northern District of California

1  Netflix's Terms of Use does not constitute "defining a set of notification rules for the subscriber rental

2  queue . . . authorized by the subscriber" as recited in claims 13 and 23.

3

4         **2.    "Account Hold," "Netflix Friends – Movie Notes," and "Facebook Connect"**
              **features**

5

6         Netflix's "Account Hold" feature allows a subscriber to temporarily place his or her subscription

7  account on hold for vacation or other reasons.  Plaintiff contends that this feature constitutes the

8  "notification rules" as recited in claims 13 and 23 because the subscriber's suspension of his or her

9  subscription account will cause a temporarily halt on Netflix's transmittal of certain notifications, such

10 as notifications of shipment, to the subscriber.  In other words, plaintiff asserts that in choosing to

11 suspend his or her subscription account, the subscriber designates rules that would control Netflix's

12 transmittal of notifications to the subscriber.

13        The "Netflix Friends – Movie Notes" feature is an electronic notification option that allows the

14 subscriber to receive email notifications about movie recommendations from friends.  Plaintiff contends

15 that this feature is yet another example of "notification rules" governing the transmittal and content of

16 notifications about movies a subscriber may wish to add to his or her rental queue.  Netflix also has a

17 "Facebook Connect" feature that allows its subscribers to connect their Netflix accounts to their

18 Facebook accounts.  By choosing this option, a subscriber can receive notifications containing

19 information on movies rated by friends and links that allow the subscriber to add the rated movies to

20 his or her rental queue.  Plaintiff contends that this feature also constitutes "notification rules" governing

21 the transmittal and content of notifications about movies the subscriber may wish to add to his or her

22 rental queue.

23        According to the Court's construction of the claim terms, "notification rules" must govern the

24 transmittal of notifications about the subscriber's rental queue status.  Since plaintiff has presented no

25 evidence that the accused features of Netflix's system control notifications about the status of the

26 subscriber's rental queue, the Court finds that none of the Netflix features relied upon by plaintiff

27 constitute "notification rules" as recited in claims 13 and 23.

28

United States District Court
For the Northern District of California

**B.      Queue Replenishment Control Rules Authorized by the Subscriber**

     **1.      Netflix's User Profiles**

Netflix allows its subscribers to create up to four profiles for each subscriber account. Plaintiff contends that the User Profiles contain a number of features that invoke queue replenishment control rules relating to the refilling of the subscriber's rental queue. First, the User Profiles have a feature enabling a subscriber to divide DVD allotments for different profiles defined within the subscriber's account. Plaintiff contends that this allotment division feature constitutes "queue replenishment control rules" as claimed in claims 13 and 23 because the division feature controls at least the order in which titles are provided to the subscriber. Second, the User Profile has a feature enabling a subscriber to specify maturity levels for different profiles defined within his or her account so that parents may restrict their children from adding certain material to their queue, for example. Plaintiff contends that this maturity level setting feature is yet another example of "queue replenishment control rules" that are used to determine whether a particular media title may be added to the subscriber rental queue. Third, plaintiff asserts that Netflix's offer to provide Blu-ray movies to subscribers who choose to pay a premium is another example of "queue replenishment control rules" because this additional option controls whether a particular type of media may be added to the subscriber's rental queue.

According to the Court's claim construction, the "queue replenishment control rules" must govern whether to automatically add media titles to the subscriber rental queue, and plaintiff has presented no evidence that the accused features of Netflix's system allows such automated queue replenishment to occur. Accordingly, the Court finds that Netflix's system does not employ "queue replenishment control rules" as recited in claims 13 and 23.

     **2.      Netflix's Terms of Use**

Plaintiffs also cite portions of Netflix's Terms of Use that describe the manner in which Netflix selects titles to be shipped to subscribers based on their rental queues:

> We determine which movies to send you based on the movies in your Queue and the priority in which you have listed them. We endeavor to ship to you the movies listed highest in your Queue; however when availability is limited we may ship you movies

1    lower on your Queue.

2    As a result of the operational practices described in this section, we may not always send
     you the top choices from your Queue, ship out your next DVD on the same day that we
3    receive one from you, or process orders from your local distribution center.

4    McEntee Decl., Ex. B, 4. Plaintiff contends that these terms constitute "queue replenishment control

5    rules" as recited in claims 13 and 23 because these terms impact the order in which DVDs are provided

6    to the subscriber.

7        Plaintiff also points out that the Terms of Use describe how the subscriber's shipping address,

8    which is designated by the subscriber, is used to determine the subscriber's local shipping center and

9    select media titles to be shipped to the subscriber according to the availability of media titles at the

10   subscriber's local shipping center. Thus, plaintiff argues that these terms constitute "queue

11   replenishment control rules authorized by the subscriber" that are used to determine whether the

12   ordering of the subscriber's rental queue should be altered.

13       Claims 13 and 23 both require "authorization" of the queue replenishment control rules, and as

14   noted above, the mere acceptance of Netflix's Terms of Use does not constitute the subscriber's

15   "authorization" of the rules within the context of the claims at issue. Moreover, the "queue

16   replenishment control rules" must govern whether to automatically add media titles to the subscriber's

17   rental queue, and the terms of use cited by plaintiff do not satisfy this requirement because they merely

18   control the modification of the queues, not automatic addition to the queues. Therefore, the Court finds

19   that the portions of the Terms of Use cited by plaintiff do not constitute "queue replenishment control

20   rules" as recited in claims 13 and 23.

21

22            **3.    Netflix's Subscription Plans**

23       Netflix allows its subscribers to choose a subscription plan from multiple options. The

24   subscription plan options allow a subscriber to designate how many titles the subscriber can check out

25   at one time and/or how many titles the subscriber can receive per month, for example. Plaintiff contends

26   that the subscription plan selected by the subscriber constitutes "queue replenishment control rules"

27   authorized by the subscriber because the selected subscription plan controls the ordering of the

28   subscriber's rental queue.

United States District Court
For the Northern District of California

22

United States District Court
For the Northern District of California

As noted above, "queue replenishment control rules" within the context of claims 13 and 23 must govern whether to automatically add media titles to the subscriber's rental queue, and plaintiff has not presented any evidence that the subscription plans govern the automatic addition of media titles to the subscriber's rental queue.[8] Therefore, the Court finds that Netflix's Subscription Plans do not constitute "queue replenishment control rules" as recited in claims 13 and 23.

In conclusion, the undisputed factual records reveal that none of the accused features of Netflix's system read on the claimed features of the '243 patent so that Netflix is entitled to summary judgment on the issue of noninfringement.[9]

## VI.    Blockbuster's Motion for Summary Judgment of Noninfringement

Blockbuster maintains that its online subscription program, Blockbuster Online (registered trademark), does not infringe the '243 patent claims as a matter of law. Blockbuster's motion for summary judgment is partially based on the construction of the three disputed claim terms, "a set of notification rules," "a separate set of queue replenishment control rules," and "authorized by the user." Blockbuster argues that under proper construction of these claim terms, it does not use "a separate set of queue replenishment control rules" that are used to "monitor the subscriber rental queue" so that it is entitled to summary judgment as a matter of law. Blockbuster further argues that even under the claim construction asserted by plaintiff, it does not use "a set of notification rules" and "a separate set of queue replenishment control rules" to "monitor[] the subscriber rental queue," nor does it use "a

---

[8] Plaintiff relies on the patent examiner's remarks in the First and Second Office Action issued in connection with the '243 patent that describe queue replenishment control rules as governing the ordering of the rental queues to support its argument that the rules do not necessarily have to relate to the addition of media titles. However, plaintiff's argument is unwarranted in light of the fact that the patentee specifically refuted the patent examiner's interpretation in its response.

[9] Plaintiff pointed out for the first time during oral argument that Netflix's online system provides subscribers with the option to receive "Netflix News," which contains information about the subscriber's queue status. Plaintiff argued that this feature constitutes rules governing notifications about queue status that are authorized by the subscriber. Defendants objected to the evidence because the issue was never raised in plaintiff's briefs. However, the Court finds it unnecessary to address this issue in light of the fact that plaintiff does not raise a triable factual dispute as to whether Netflix employs "queue replenishment control rules" as claimed in the '243 patent so that Netflix would be entitled to summary judgment regardless of whether the "Netflix News" feature constitutes "notification rules" as claimed.

23

United States District Court
For the Northern District of California

1  recommender system" in connection with sending electronic notifications to subscribers as contemplated

2  by the '243 patent. Thus, Blockbuster argues that based on the undisputed facts, it is entitled to

3  summary judgment regardless of the construction of the disputed claim terms. Plaintiff disputes the

4  accuracy of Blockbuster's factual statements about its system and contends that there are genuine issues

5  of material fact as to whether Blockbuster uses "queue replenishment control rules," "notification rules,"

6  and "a recommender system" as required by the '243 patent. Plaintiff also argues that Blockbuster's

7  motion is premature because Blockbuster has not provided sufficient discovery to enable plaintiff to

8  fully respond to Blockbuster's assertions.

9

10      **A.**    **Queue Replenishment Control Rules Authorized by the Subscriber**

11           Blockbuster asserts that its online subscription program does not allow subscribers to "authorize"

12  any "queue replenishment control rules" and does not use "queue replenishment control rules" to

13  "monitor" subscriber rental queues. Specifically, Blockbuster asserts that the '243 patent claims require

14  queue replenishment control rules to be selected by a subscriber from among plural options to enable

15  the subscriber to customize rules governing  whether to automatically add items to the subscriber's

16  rental queue and be used to monitor the subscriber's rental queue. Blockbuster argues that it can be

17  determined based on the undisputed facts that none of its features read on the step of "monitoring the

18  subscriber rental queue with a computer in accordance with said set of notification rules and a separate

19  set of queue replenishment control rules authorized by the subscriber" as recited in claims 13 and 23.

20  Plaintiff contends that a subscriber's selection of Blockbuster's subscription plan and a subscriber's

21  creation of his or her profile are examples that constitute authorization of queue replenishment control

22  rules as required by the '243 patent claims.

23           Specifically, Blockbuster Online has a feature similar to that of Netflix's system for allowing

24  subscribers to select a subscription plan from multiple options. The subscription plan determines the

25  number of movies the subscriber may check out at one time and whether to limit the number of movies

26  the subscriber can receive per month. Plaintiff contends that the replenishment of a subscriber's queue

27  is, in part, controlled by the subscription plan selected and may affect whether a low or empty queue

28  notification is sent. Blockbuster also allows a subscriber to create a profile in which the subscriber is

United States District Court
For the Northern District of California

1 presented with multiple options for setting his movie preferences, which in turn is used by Blockbuster

2 to make movie recommendations to the subscriber. Plaintiff contends that this feature is yet another

3 exemplary feature of Blockbuster Online that embodies the queue replenishment control rules authorized

4 by the subscriber as claimed in the '243 patent because the subscriber is presented with a number of

5 options to customize rules for governing replenishment of his or her queue and these rules are used to

6 monitor the subscriber's rental queue to make recommendations that are consistent with the subscriber's

7 profile.

8 However, as noted above, "queue replenishment control rules" within the context of claims 13

9 and 23 must govern whether to automatically add media titles to the subscriber's rental queue, and

10 plaintiff has not presented any evidence that Blockbuster's subscription plans govern automatic addition

11 of media titles to the subscriber's rental queue. Plaintiff further concedes that the options presented to

12 the subscriber to create his or her profile do not govern whether to automatically add movies to the

13 subscriber's rental queue. Therefore, the Court finds that Blockbuster's subscription plan does not

14 constitute "queue replenishment control rules" as recited in claims 13 and 23.

15

16 **B.    Notification Rules used for Monitoring the Subscriber Rental Queue**

17 Plaintiff points to Blockbuster Online's "Update Subscription Notification Settings" feature that

18 purportedly allows a subscriber to select or update certain notification settings, including the option to

19 receive low or empty queue notifications. Plaintiff contends that the notification settings constitute

20 "notification rules" as recited in claims 13 and 23 because by selecting or updating these settings, the

21 subscriber defines rules governing the transmittal of notifications about queue status sent to the

22 subscriber. Blockbuster contends that while its program appears to allow its subscribers to update or

23 change their subscription notification settings, it no longer makes use of this feature and has not done

24 so since no later than May 2008.[10] Blockbuster asserts that all electronic notifications about the

25 subscriber's queue status are currently sent to subscribers on a manual ad-hoc basis. Plaintiff challenges

26 Blockbuster's factual assertion that electronic notifications about queue status are sent to subscribers

27

28        [10] The '243 patent was issued on June 17, 2008.

25

A0029

manually on an ad-hoc basis. Plaintiff has submitted declarations supporting its assertion that Blockbuster is in fact using notification rules controlling the transmittal of notifications about queue status to the subscriber. Plaintiff also alleges that Blockbuster has not provided sufficient discovery about its manual ad-hoc notifications to enable plaintiff to fully respond to Blockbuster's assertions. In view of this factual dispute, the Court finds that summary adjudication on the issue of whether Blockbuster's accused feature constitutes the claimed notification rules is inappropriate.

### C.    Recommender System

The Court notes that both parties agreed in their claim construction briefs that a "recommender system" in the context of claim 13 refers to a system that employs an algorithm for predicting media titles likely to be of interest to the subscriber. To support its argument that Blockbuster employs a recommender system as recited in claim 13, plaintiff points to examples of queue status notifications containing media title recommendations that were sent by Blockbuster to its subscribers. Blockbuster contends that it does not use a recommender system that employs an algorithm to predict a media title of interest to the subscriber. Instead, Blockbuster asserts that its subscribers receive a generic recommendation that is compiled by humans, not computers. Blockbuster further asserts that even though it has a third party recommender tool that provides recommendations to subscribers, that tool is not technologically connected to any low or empty queue electronic notifications sent by Blockbuster. Accordingly, Blockbuster asserts that its system does not satisfy element (e) of claim 13 that requires "causing said recommender system to interact with the subscriber and provide a playable media title recommendation in response to user input provided within a response to said electronic notification." '243 patent, 27:40-43. Plaintiff disputes Blockbuster's factual assertion that its electronic queue status notification does not cause a subscriber to interact with its recommender tool. Specifically, plaintiff contends that Blockbuster's electronic notification includes a recommendation link that can cause the subscriber to interact with Blockbuster's recommender tool by prompting the subscriber to click this link. Plaintiff also contends that Blockbuster has not provided sufficient discovery on how it generates low or empty queue notifications with recommendations to enable plaintiff to fully respond to Blockbuster's assertions. In light of these conflicting factual allegations, the Court finds that there is

United States District Court
For the Northern District of California

26

United States District Court
For the Northern District of California

1    a genuine factual dispute as to whether a recommender system as recited in claim 13 is found in the

2    accused Blockbuster system that prevents the Court from summarily deciding this matter.

3        In conclusion, while the Court cannot resolve the issue of whether Blockbuster's system employs

4    "notification rules" and "a recommender system" as recited in the '243 patent claims, the Court finds

5    as a matter of law that Blockbuster's system does not employ "queue replenishment control rules" that

6    are used by a computer to determine whether a media title should be automatically added as required

7    by claims 13 and 23. To establish infringement, every limitation in a claim as construed by the Court

8    must be in the accused product, either exactly or by a substantial equivalent. *Carroll Touch, Inc.*, 15

9    F.3d at 1576. Since plaintiff has failed to show that Blockbuster's online subscription system includes

10    each and every limitation of the claims as construed by the Court, Blockbuster is entitled to summary

11    judgment on the issue of noninfringement.

12

13                           **CONCLUSION**

14        For the foregoing reasons and for good cause shown, the Court hereby adopts the constructions

15    set forth above, and GRANTS defendants' motions for summary judgment. (Docket Nos. 160, 169, 171,

16    173).

17

18    **IT IS SO ORDERED.**

19

20    Dated: December 1, 2009

21                                       SUSAN ILLSTON
                                        United States District Judge

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was   retained by ALSTON & BIRD, LLP, Attorneys for Plaintiff-Appellant to print this document.  I am an employee of Counsel Press.

On the **20st Day of April 2010**, I served the within **Brief for Plaintiff-Appellant** upon:

David K. Wooten                     Michael A. Jacobs
Leisa Talbert Peschel              Matthew I. Kreeger
Scott Beedlove                        Marcelo Guerra
Vinson & Elkins LLP               Morrison & Foester LLP
2001 Ross Avenue, Suite 3700   425 Market Street
Dallas, Texas 75201               San Francisco, CA 94105
sbreedlove@velaw.com          mjacobs@mofo.com
Lpeschel@velaw.com             mkreeger@mofo.com
dwooten@velaw.com             mguerra@mofo.com

Attorneys for Appellee            Attorneys for Appellee
Blockbuster                            Netflix

Steven Niebow
2100 Oxnard Street, Suite 750
Woodland Hills, CA 91367
mdsesq@aol.com

Attorney for Appellee
Greencine Holdings

**via Express Mail and E-Mail,** by causing 2 true copies of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.

Unless otherwise noted, 12 copies have been hand-delivered to the Court on the same date as above.

April 20, 2010

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

This brief contains  9,170  words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14 Point Times New Roman.

Dated:  April 20, 2010

By: _____

Michael J. Newton
ALSTON & BIRD, LLP
*Attorneys for Plaintiff-Appellant Media Queue, LLC*